[No. 20116. Department One. April 25, 1927.]

## C. M. DUNN et al., Respondents, v. G. S. BAILEY et al., Appellants.[1]

[1] PRINCIPAL AND SURETY (14)—TERMINATION OF LIABILITY—NOTICE BY SURETY—SUFFICIENCY. The surety on a jitney bond, given under Rem. Comp. Stat., §§ 9942-9946, for the protection of passengers in for-hire automobiles, cannot cancel its liability to the public without giving reasonable notice; and two hours notice is not a reasonable notice.

[2] MUNICIPAL CORPORATIONS (354-1)—STREETS—USE—LIABILITY ON JITNEY BONDS. After a bond is given and permit issued to use a particular automobile in a city of the first class to carry passengers for hire, under Rem. Comp. Stat., § 9942 et seq., the status of the car is fixed, and non-liability of sureties for injuries inflicted in a collision cannot be established by proof that the principal in the bond was not engaged in such business, while the permit remained uncancelled.

Appeal from a judgment of the superior court for King county, Frater, J., entered May 7, 1926, upon the verdict of a jury in favor of the plaintiffs, in an action for personal injuries resulting from a collision of motor vehicles. Affirmed.

*Ralph S. Pierce,* for appellants.

*Poe, Falknor, Falknor & Emory,* for respondents.

MITCHELL, J.—On July 9, 1924, C. M. Dunn with his wife and Charles W. McClain, a guest, riding in an automobile driven by Dunn, suffered injuries in a collision at a street intersection, in the city of Seattle, with a for-hire car, owned and operated by G. S. Bailey and H. H. Bailey, doing business as the DeLuxe Cab Company, driven by Lester Grove, an employee of the cab company. McClain and wife instituted an action to recover damages against the Baileys and the Mutual

[1]Reported in 255 Pac. 930.

Union Insurance Company, the surety upon the bond required under ch. 57, Laws of 1915, p. 227 (Rem. Comp. Stat., § 6382 *et seq*) [P. C. § 235], and Lester Grove, the driver of the cab. Charles W. McClain brought a similar action against the same parties to recover damages for the injuries he suffered. In each action, all of the defendants appeared, the Mutual Union Insurance Company separately. The two cases were consolidated for trial before a jury, by consent of the parties. Verdicts were returned against all of the defendants, who have appealed from judgments on the verdicts. The two cases have been presented together on the appeals.

[1] Assignments of error 1 to 10 inclusive, made on behalf of the surety company, present, as its counsel states, the sole question as to what is the proper procedure to release a surety from liability on a bond filed with the secretary of state, under the provision of the jitney law, ch. 57, Laws of 1915, p. 227; Rem. Comp. Stat., § 6382 *et seq, supra.*

The bond in this case is unlimited as to the period of its duration. The statute does not fix any term for such bonds. Its purpose under the law is in behalf of every person injured by any careless, negligent or unlawful act of any person, firm or corporation receiving a permit to engage in business under the provisions of the act. The bond was filed in the office of the secretary of state as the law required. Under date of July 8, 1924, the surety company wrote to the secretary of state with reference to this bond saying, "Kindly cancel same on your records." The letter was postmarked "Seattle Terminal Station—6 P. M. July 8, 1924." There was no direct testimony of the receipt of the letter at the office of the secretary of state except that it was received on July 9, 1924. There was substantial

testimony that, in the usual course, a letter thus mailed at that time would reach Olympia about half past five o'clock on the morning of July 9, and be carried from the post office by an employee of the secretary of state to the secretary's office about nine o'clock that morning; though the postmaster of Olympia testified that, from the postmark on the letter, he could not say whether the letter arrived in Olympia on the time thus mentioned or by a later train that morning for the afternoon delivery on July 9, 1924. The collision out of which these actions arose occurred at eleven o'clock a. m., July 9, 1924.

Counsel admits that so far as the public is concerned no other attempt at cancellation of the bond was made. The argument is that, by the weight of the evidence, the surety company's notice was received by the secretary of state at nine o'clock on July 9, 1924, and that the bond was thereby canceled, *instanter*—two hours before the collision occurred. The jitney act has no provision by which such a bond may be canceled or the surety released from liability. Counsel argues that the trial court erroneously assumed that the situation was controlled by the act of 1890, Session Laws, p. 43; Rem. Comp. Stat., §§ 9942-9946, which provides for personal notice of ten days, or published notice of twenty days in case of a non-resident, of desire and purpose to be released from liability as surety on a bond. It seems to be admitted that the body of that act is sufficiently explicit to cover this kind of a bond; but it is claimed by the appellant that its provisions in that respect are invalid because they are not expressed in the title of the act, as required by § 19, art. 2 of the state constitution, the title of the act being "An act providing for the release of sureties on official bonds and undertakings." That is, that the bond in

this case is not an official bond as contemplated by that act.

But, if this or any other statute does not apply, the appellant is not excused, in our opinion, from at least giving a reasonable notice, and surely two hours is not reasonable notice. We do not decide whether the surety can be released at all from liability on this kind of a bond, as long as the carrier's permit to do business is outstanding, by any voluntary act or acts of less than all the parties in interest; but simply hold that, if it can be done by the surety only, reasonable notice must be given. Here the surety's liability is for the benefit of third parties on account of contingent liabilities against the principal and surety which may arise in favor of such third parties.

In Brandt on Suretyship and Guaranty (3d ed.), vol. 1, § 153, the author says:

"Where a surety on the bond of a bank cashier notified one of the directors and vice-president that he wished no longer to be the cashier's surety, and that he had so notified the cashier, it was held that, whatever might be the effect of such notice, it could not operate instantaneously, for the directors must have a reasonable time to give notice to the cashier and the other sureties, and to procure a new bond. The court said: 'If the effect of the notice is to be such as is now claimed on the part of the appellant, that is, if it discharged Haight (the surety), and, in consequence thereof, discharged all the other sureties, the instant it was communicated to the bank, it might be quite embarrassing and damaging to the bank. The cashier might be so situated that the directors could not immediately arrest his discharge of duty or his ability to bind the bank, and hence reasonable time at least must be given to the bank in such a case to act after receiving the notice. What is a reasonable time depends upon the facts of each case. In one case thirty days was held too short a time."

In Pingrey on Suretyship and Guaranty (2d ed.), § 86, p. 103, it is said:

"In continuing contracts guarantying the fidelity of a person, or employee, the revocation may be made upon proper notice, but the right must be exercised reasonably, giving the employer a reasonable time to adjust the changed circumstances. Thus, the employer cannot be compelled to discharge the employee instantaneously, but he may take a reasonable time to do it."

In *Reilly v. Dodge*, 131 N. Y. 153, 29 N. E. 1011, a sheriff sued his deputy and sureties on the deputy's bond. One of the sureties served a written notice on the deputy that he declined to be surety for him from and after that date. The court said:

"Whether a surety upon a penal bond, conditioned upon the faithful performance of his duty, by a public officer, like a deputy sheriff, can terminate his liability without the consent of the sheriff or the principal in the bond, or can become discharged without any new consideration, is a point that is not necessary to decide in this case. It is entirely safe to hold, however, that a notice by the surety, such as was served in this case, does not operate to discharge the sureties until a reasonable time has elapsed sufficient to enable the sheriff to give notice to the deputy and the other sureties, and to permit a new bond to be given."

Then, upon discussing the responsibilities of the sheriff's office, and the embarrassments any other course might cause, the court said:

"Unless the sureties can be held by him to the liability which they assumed for at least a reasonable time after the notice he may be subjected to liability of the gravest kind for the acts of others, without any means of protection. That this responsibility cannot be thrown upon the sheriff by the sureties at will and upon notice merely, would seem to be clear upon principle, and is sustained by abundant authority. It

is sufficient to cite the cases that sustain this proposition, or some principle leading up to it, without comment: *Bostwick v. Van Voorhis,* 91 N. Y. 363; *Barnard v. Darling,* 11 Wend. 29; *Andrus v. Bealls,* 9 Cow. 693; *Hart v. Brady,* 1 Sandf. 626; *Hunt v. Roberts,* 45 N. Y. 696; *Burgess v. Eve,* L. R. 13 Eq. 450; *Hough v. Warr,* 1 Carr. & P. 151; *Hassell v. Long,* 2 Maule & S. 363, 370; *Calvert v. Gordon,* 2 Man. & R. 124; De Col. Guar. (2nd ed.), p. 346; Fell, Guar. (2nd ed.) 530.''

In *LaRose v. Logansport Nat. Bank,* 102 Ind. 332, 1 N. E. 805, the court said:

"Whether the notice was given a day before the defalcation, or a month or a year, does not appear. Let it be assumed, as we think it may, that the guarantors had the right, upon reasonable notice to the proper officers and directors of the bank, to revoke their guaranty, without regard to any misconduct on the part of their principal and for no other reason than that they chose to do so, yet they must exercise this right reasonably. No misconduct creating a probable emergency appearing, the bank could not be expected to subject its affairs to probable embarrassment by the immediate discharge of its chief executive officer. While we find no adjudged case which holds that guarantors in a continuing contract like this may, upon notice, revoke the guaranty without cause at their pleasure, we are nevertheless of opinion that in sound reason such right should and does exist; but the right must be exercised reasonably, and upon due and proper notice to all concerned."

To permit the surety in this kind of a bond to cancel its liability at will and at once, might reasonably result in defeating the policy of the law requiring the bond, and at least would greatly embarrass the public authorities in their protection of the public on account of the outstanding permit to the carrier to engage in business. In our opinion, the notice given by the surety company to the secretary of state attempting to cancel

its liability on the bond was ineffective as to the rights of these respondents.

[2] The answer of the individual defendants admitted the allegation of the plaintiffs' complaint that the Baileys were engaged, at the date of the accident, in the business of carrying or transporting passengers for hire in the city of Seattle, a city of the first class, and for that purpose were using the car involved in the collision. The surety company, by its answer, denied this allegation of the complaint and at the trial offered on its behalf to prove by one of the Baileys that neither he nor his partner, individually or as the DeLuxe Cab Company, engaged in conducting a for-hire business with this or any other car in Seattle or elsewhere between the dates of April 18, 1924, and July 10, 1924. The rejection of this offered testimony is assigned as error. There was no dispute that a permit was issued to the Baileys on or about February 9, 1924, to engage in the business of carrying passengers for hire with this particular car in the city of Seattle. No period of time was fixed as the life of the permit nor does the statute provide for any.

The statute, already referred to, is to allow any person, firm or corporation other than a steam, street or interurban railway company to engage in the business of carrying passengers for hire in motor propelled vehicles along the public streets and highways within the corporate limits of any city of the first class upon obtaining a permit to do so and furnishing a surety bond conditioned as the act provides. Section 3 of the act [Laws of 1915, p. 228; Rem. Comp. Stat., § 6384], provides that every person injured by any careless, negligent or unlawful act of any person, firm or corporation receiving a permit under the provisions of this act, or his, their, or its agent or employees in

conducting or carrying on said business or in operating any motor propelled vehicle used for the carrying and transporting of passengers over and along any public street, road or highway, and his heirs, etc., shall have a cause of action against the principal and surety upon the bond provided for in the act for all damages sustained. If the testimony offered was competent, then testimony of the same kind limited to a month, a week, a day or an hour before the accident, would be proper and defensive, notwithstanding the user of the car at the moment of causing the damage to another held a permit to do business and was under bond for the use and benefit of the person damaged. We think that, in order to effect the manifest purpose and policy of the law, it must be held that, after the bond is given and the permit to do business is delivered, the law classifies or fixes the status of the motor vehicle covered and that the owner or his surety will not be permitted to say that it was not under the provisions of the law. The proposed evidence is inconsistent with an outstanding permit to engage in that kind of business. Such holding can in no way harm the permittee or his surety, since there is nothing in the act to prevent the surrender and immediate cancellation of the permit at any time.

Finally it is claimed that the court erred in not giving instruction number 8 requested by appellants. The substance of it as applied to the facts and circumstances of this case was included in instructions that were given.

Affirmed.

FRENCH, MAIN, ASKREN, and FULLERTON, JJ., concur.