## BOULTER et al. v. COMMERCIAL STANDARD INS. CO.

### No. 12056.

United States Court of Appeals
Ninth Circuit.

June 27, 1949.

Rehearing Denied Aug. 17, 1949.

Nathan G. Gray, Berkeley, Cal., for appellant.

Paul C. Dana, Leighton M. Bledsoe, Rogers P. Smith, R. S. Cathcart, Dana, Bledsoe & Smith, San Francisco, Cal. (R. S. Cathcart, San Francisco, Cal., of counsel), for appellee.

Before MATHEWS, HEALY and POPE, Circuit Judges.

POPE, Circuit Judge.

The Boulters, husband and wife, who are appellants here, received personal injuries in a collision between their automobile and a tractor-type truck driven by one Warner. Warner and his partner, who owned the truck and were engaged in the transportation of property for hire pursuant to a permit issued by the California Public Utilities Commission, had procured a policy of liability insurance covering the truck from the appellee, a Texas corporation. Appellants sued Warner in the State court and each recovered a judgment on account of injuries received in consequence of the collision. The appellee Insurance Company defended the suit under a non-waiver agreement from Warner. Appellants, unable to collect their judgment from Warner, then brought this action against the Insurance Company to recover the amount of their respective judgments. In the action, which was removed to the district court by reason of the diversity of citizenship of the parties, the appellee defended on the ground that at the time and place of the accident the truck was being used in such manner as not to be covered by the provisions of the policy. While the first action was pending the Insurance Company procured a declaratory judgment by default in an action which it had filed in the United States District Court against its insured. This judgment held the truck was not covered by the policy at the time of the accident. The Boulters, although named defendants in that action, were never served.

The principal question which arises upon this appeal is whether the policy here involved did in fact cover the truck. The policy, which insured against public liability and property damage, contained the following provision: "The automobiles described are and will be used only for transportation of merchandise purposes, and will be operated as follows, and this insurance covers for no other use or operation."

The Insurance Company asserts that at the time of the accident the truck was not being used for "transportation of merchandise purposes" and hence that neither the insured nor the Boulters could acquire any rights thereunder.

The California Highway Carriers' Act[1] provided the Public Utilities Commission should require highway carriers to procure policies of public liability and property damage insurance, and the Commission was granted power to establish rules and regulations to make this requirement effective. The Commission required such policy to carry an endorsement or rider (which was on the policy in question) which provided that the Company "will pay any final judgment rendered against the insured for bodily injuries to or death of any person or persons other than the named insured, or damage to or destruction of property, or both, arising out of the ownership, maintenance or use of any vehicle operated under authority of the aforesaid statutes * * * that the judgment creditor may maintain an action in any court of competent jurisdiction to compel such payment * * *. Provided, however, that this endorsement shall not be construed to impose any obligation on the Company for which it would not be liable independently hereof with respect to * * * (4) any loss arising out of any operations of the insured except operations authorized or for which authorization is required under the aforesaid statutes."

Upon demand of the plaintiffs, this action was tried to a jury which returned a verdict for plaintiffs. A motion for a directed verdict was made by the defendant Insurance Company at the close of the evidence. The court reserved ruling on the motion until after the verdict. After the verdict was returned the Insurance Company moved for judgment notwithstanding the verdict and for a new trial in the alternative. The lower court thereupon granted the motion for a directed verdict, set aside the verdict and directed judgment to be entered for the defendant. The motion for a new trial was denied.

The evidence, viewed in the light most favorable to the Boulters, disclosed that a week prior to the accident Warner had driven the truck, which is generally referred to in the record as a Dodge tractor, with trailer attached, from San Francisco to Willow Creek which is near Eureka, California. His trailer was loaded with a quantity of pipe and furniture which he was hauling for his sister who resided at that place. His sister paid him for hauling the property. He testified that after arrival at his sister's place he attempted to procure a load of lumber at Eureka for hauling on his return trip to San Francisco, but finding it impossible to secure such a load he spent a few days at his sister's place vacationing and using the pipe to install a water system for her. The day of the accident the trailer was not completely unloaded, and leaving the trailer at his sister's home, Warner drove the tractor portion of the vehicle to San Francisco. His

---

[1] Highway Carriers' Act, Statutes 1935, Chapter 223, Sec. 5, Gen.Laws, Act 5129a: "The Railroad Commission shall, in granting permits under the provisions of this act, require the highway carrier to procure, and continue in effect during the life of the permit, adequate protection, as required in section 6 hereof, against liability imposed by law upon such highway carrier for the payment of damages for personal bodily injuries (including death resulting therefrom) in the amount of not less than five thousand dollars on account of bodily injuries to, or death of, one person; and protection against a total liability of such highway carrier on account of bodily injuries to, or death of, more than one person, as a result of any one accident, in the amount of not less than ten thousand dollars; and protection in an amount of not less than five thousand dollars for one accident resulting in damage or destruction of property whether the property of one, or more than one claimant."

wife, who had accompanied him on the trip, was riding with him. It was as he was driving toward San Francisco that the accident occurred which caused the injuries to the Boulters.

Warner testified that he operated as a "wildcat" trucker. His headquarters were at his residence in San Francisco, but as such trucker he had no fixed route or schedule; he used his equipment to go from place to place hauling for whoever might hire him. The tractor portion of the vehicle was equipped so that loads could be carried by it when detached from the trailer, and it was frequently used in that manner. On occasions when his own trailer was loaded he used the tractor to haul other loaded trailers. He defined a "wildcat" operator as one who has no definite over-the-road operations of his own but who makes irregular trips generally for big contractors and other haulers.

Warner testified that as he drove toward San Francisco he intended to stop at San Francisco for the purpose of paying to the Insurance Company the premium on this policy, and this was the primary reason for his starting for San Francisco at that time. He testified that it was also his intention to continue his trip on to San Jose, a short distance to the south of San Francisco, for the purpose of making contact with one Dowdell who was in the trucking business and for whom he had previously done hauling, in an effort to obtain hauling from him. Because his tractor, after the accident, required repairs at San Francisco, Warner did not get beyond that point on this trip, but returned to Willow Creek a few days later for his trailer.

A determination of whether Warner's liability on this occasion was covered by the policy turns upon a construction of the two provisions of the policy and the Commission's rider, quoted above. If within the meaning of the first quoted clause the tractor was being used for "transportation of merchandise purposes" this accident was covered by the policy. Also, if any use to which the tractor was then being put was a part of any "operations authorized or for which authorization is required" under the statutes referred to in the rider, the insurance covered.

In considering the meaning of the policy and the significance of the facts here, several preliminary observations should be made. In the first place, it is not of controlling significance that Warner had recently been vacationing at his sister's place. When he started for San Francisco his vacation had ended, and he so testified.[2]

■ Also there is nothing in the policy which operates to limit its coverage to times when the truck was actually loaded with merchandise. The provision of the policy to the effect that the vehicle would be "used only for transportation of merchandise purposes" does not exclude coverage when the truck is running light, either on a return trip or in anticipation of procuring a load. Such movement would be one "for which authorization is required" within the meaning of the rider mentioned.

■ Again, there is nothing in the policy which purports to limit or circumscribe the manner in which the "transportation of merchandise" business is to be conducted. The provision of the policy quoted above which recites that the vehicle will be used only for those purposes, contains the words "and will be operated as follows", but the blank space following was not filled. The insured might carry on such business in any manner which he might choose consistent with the restrictions of the California Highway Carriers' Act. As a "wildcat operator" he sought business wherever he could find it and drove his truck from place to place in search of hauling jobs. This is the way he chose to operate. When he did so, he was using his truck for "transportation of merchandise purposes". It is evident that he operated his vehicle in somewhat the same manner as does a cruising taxi-cab operator. There is no evidence that he owned any vehicles other than his tractor-trailer combination.

---

2 Compare the cases dealing with the truck-driving servant who, after being upon a frolic of his own, resumes his employment by starting for the place where his duties called him, such as Cain v. Marquez, 31 Cal.App.2d 430, 88 P.2d 200.

If he had to use his truck for all purposes of his business, including solicitation of jobs, for want of a lighter car, the use is none the less one for "transportation of merchandise purposes."

Not only must the policy be liberally construed in favor of the insured, in accordance with the usual rule in such cases, Aschenbrenner v. U.S. Fidelity & Guaranty Co., 292 U.S. 80, 54 S.Ct. 590, 78 L.Ed. 1137, but the language of the Commissioner's rider must be construed to accomplish the purposes of the Highway Carriers' Act. We think that the legislative requirement was intended to secure the general public in respect to accidents caused by such trucks when operating on the public highways, whether loaded, or merely cruising in search of loads.

In view of what we have said, we cannot arrive at any conclusion other than that the evidence was sufficient to permit the jury to find that the vehicle was at the time of the accident covered by the policy in question. It is true that it was then running light, but Warner testified, and the jury were entitled to believe that his errand to San Francisco and vicinity was made in part for the purpose of seeking a load from Dowell at San Jose where Warner thought he might be able to get a job hauling fruit which had then started to move. That Warner was prompted to make that trip on that particular day because his insurance was then due or that the payment of the premium was an important reason for the trip does not require a holding that he was not then engaged in the operation of the truck for transportation of merchandise purposes. The fact that he had left his trailer at Willow Creek does not disprove such present use as the tractor portion of the truck was equipped with a bed on which merchandise could be and was sometimes hauled, and Warner testified that he fre-

quently used his tractor to haul licensed trailers belonging to others, particularly at times when his own trailer was in the process of being unloaded. Even if the errand to pay the premium was an excluded use, which we are not prepared to say, the only consequence would be that Warner combined a purpose to procure hauling with a purpose to pay a bill. A multiple purpose trip, in part for nontransportation purposes, is nevertheless protected under the Commission's rider, so long as it is in any respect an operation "for which authorization is required".

Our attention has been called to numerous cases dealing with the question of what operations by vehicles operated as highway carriers are covered by the provisions of liability or indemnity policies. Some of these cases are collected in a note in 141 A.L.R. 628. Others are noted in the margin.[3] We do not feel called upon to review those cases. Each stands upon its own facts. While the views of the courts there expressed cover a wide range,[4] in our opinion none of them is contrary to the conclusions we have here reached. Particularly persuasive is the case of Smith v. California Highway Indem. Exchange, 218 Cal. 325, 23 P.2d 274, 275, which tends to sustain our views. In that case the liability policy provided that the vehicle was "to be operated in the service of the subscriber as a jitney bus * * * within the city and county limits of the city of San Francisco, and not elsewhere or otherwise." At the time of the accident the owner of the bus had driven it to his home for the purpose of taking a rest. The home was about five blocks distant from his jitney route. After his rest he was backing the vehicle away from the place it had been parked when he struck the plaintiff. The court held that the accident was included within the terms of the policy.

---

[3] Hawkeye Casualty Co. v. Halferty, 8 Cir., 131 F.2d 294; Associated Indemnity Corporation v. Bunney, 9 Cir., 137 F.2d 1; Snyder v. National Union Indemnity Co., 10 Cir., 65 F.2d 844; American Fidelity & Casualty Co. v. Bailey, 4 Cir., 76 F.2d 692; Farm Bureau Mut. Automoble Ins. Co. v. Daniel, 4 Cir., 104 F.2d 477; Trinity Universal Insurance Co. v. Cunningham, 8 Cir., 107 F.2d 857; Travelers Ins. Co. v. Caldwell, 8 Cir., 133 F.2d 649; Simon v. American Casualty Co. of Reading, Pa., 4 Cir., 146 F.2d 208; Commercial Standard Insurance Co. v. Bacon, 10 Cir., 154 F.2d 360.

[4] For an extreme case, see Dunn v. Bailey, 143 Wash. 570, 255 P. 930.

We cannot say, as a matter of law, that Warner's liability was not covered by the policy. Although his testimony was impeached by evidence of prior contradictory statements or omissions, his credibility was for the jury, Lindemann v. San Joaquin Cotton Oil Co., 5 Cal.2d 480, 503, 55 P.2d 870; Smith v. Shevlin-Hixon Co., 9 Cir., 157 F.2d 51.[5] Upon the record as made the jury might properly, as it did, find that the vehicle was being used for the purposes specified in the policy.

Appellee asserts that certain rulings adverse to it were erroneous, and that had the court ruled in its favor on these points a judgment in its favor on other grounds would necessarily have resulted.

It urges that when the appellants rested, after concluding their testimony in the court below, they had not made a prima facie case, and that the court should have sustained the appellee's motion to dismiss, made at that stage of the proceedings. We deem it unnecessary to discuss this question since the appellee proceeded to introduce the evidence upon which the appellants now rely, and thereby waived any error that may have been made in the court's ruling. Moore v. Tremelling, 9 Cir, 100 F.2d 39, 43; Bates v. Miller, 2 Cir., 133 F.2d 645.

Finally, appellee argues that the court should have upheld its plea of res judicata in which it set up its declaratory judgment. Notwithstanding the Boulters were never served in the declaratory judgment suit, it is asserted that they are bound by that judgment because, it is argued, they were in privity with Warner. The rights which the Boulters acquired under the policy became vested long prior to the institution of the suit for declaratory judgment. Under the law of California, which controls here, a privy is "* * * one who, *after rendition of the judgment,* has acquired an interest in the subject matter affected by the judgment through or under

one of the parties." (Emphasis ours.) Bernhard v. Bank of America, 19 Cal.2d 807, 122 P.2d 892, 894. This court has quoted Freeman on Judgments, Sec. 162, to the effect that "no one is privy to a judgment whose succession to the rights of property thereby affected occurred previously to the institution of the suit." Norton v. San Jose Fruit Packing Co., 9 Cir., 83 F. 512, 514.

The court below properly disregarded the plea of res judicata.

In granting the motion for judgment non obstante, the district court erred. The judgment must be reversed and the cause remanded with directions to enter judgment in accordance with the verdict of the jury.

---

[5] The court below said, in denying the motion for a new trial: "If the jury's verdict is right, it can only be because the case presented a factual situation for their solution.

"If this be so, then—despite what is said in this opinion about the unsatisfactory character of the testimony concerning the nature of the trip on which the accident occurred—I should allow the jury's conclusion upon the facts to stand and not substitute my own for it."