**PETRO et al. v. OHIO CAS. INS. CO.**
**Civ. No. 11418–Y.**

United States District Court
S. D. California, C. D.
Dec. 5, 1950.

Lasher B. Gallagher, and Bertrand Rhine, Los Angeles, Cal., for plaintiffs.

Parker, Stanbury, Reese & McGee, by White McGee, Jr., Los Angeles, Cal., for defendant.

YANKWICH, District Judge.

The question confronting the court is one of interpretation of the words in a contract of insurance. The facts are without dispute.

We start with the fact that a judgment was recovered by the plaintiffs here, as the heirs at law of the deceased, Walter John Petro, for death caused in an accident, which the judgment of the Superior Court found was brought about by the negligence of Phillip Ray Brown. The judgment was for $50,235.70 and has not been paid.

Phillip Ray Brown had a private pilot's license and was receiving additional instructions under the GI Bill of Rights (38 U.S. C.A. secs. 693 et seq.) in a school operated by the Phipps Flying Service. Phipps Flying Service had a contract for education and training with the Veterans' Administration, under which the Veterans' Administration, as an instrumentality of the Government, agreed to pay for instruction of students. The rate was fixed on an hourly basis. Dual flight instruction was at the rate of $10.86, and solo flight at the rate of $7.86 per hour.

The defendant had entered into a contract of insurance with Harry Phipps, doing business as "Phipps Flying Service", denominated "aviation liability policy".

The defendant denies liability under it by reason of the provisos denominated (e) and (f) of Clause III of the insuring agreements.

This clause, after defining the word "insured," specifies that it shall not include the following:

"(e) any persons other than officers, executives and employees of the named Insured, or any agent of the named Insured, if the business of the named Insured (insured as such) is that of an aircraft manufacturer, or aircraft engine manufacturer, or aircraft repair or service station, or aircraft sales agency, or hangar keeper, or airport operator;

"(f) or any person who is a student or renter pilot."

Subparagraph (f) is, in reality, the paragraph upon which the defense is based.

## I

### The Fundamental Principles Governing Insurance.

Two fundamental principles are to be borne in mind. The first is that in construing insurance policies the courts insist that the contract shall be construed liberal-

ly, in accordance with the usual rules in such cases.

In Boulter v. Commercial Standard Insurance Co., 1949, 9 Cir., 175 F.2d 763, the court said: "Not only must the policy be liberally construed in favor of the insured, in accordance with the usual rule in such cases, Aschenbrenner v. U. S. Fidelity & Guaranty Co., 292 U.S. 80, 54 S.Ct. 590, 78 L.Ed. 1137, but the language of the Commissioner's rider must be construed to accomplish the purposes of the Highway Carriers' Act. We think that the legislative requirement was intended to secure the general public in respect to accidents caused by such trucks when operating on the public highways, whether loaded, or merely cruising in search of loads." 175 F.2d at page 767.

The opinion of the Court of Appeals emphasizes the point, that in considering a contract of insurance of the character involved in this case, it must be construed most favorably in favor of the insured. In so doing we *are not limited* to the particular wording of any part of the contract. The contract must be considered as a whole, and, if necessary, we must take into consideration riders attached, that might throw light upon the subject. Such riders are to be read into the insurance policy for the purpose.

In that particular case, the court resorted to a rider required by the California Highway Carriers' Act to sustain its contention that, although the evidence showed clearly that at the time of the accident no goods for hire were being carried, and that the insured was not on a return trip, nevertheless, —because he testified that on this return trip he had thought of soliciting hauling, and although he did not get around to it, —this was sufficient to bring the case within the rule of the "return trip".

There is one other principle before us, which is stated very lucidly in Greenberg v. Continental Casualty Company, 1938, 24 Cal.App.2d 506, 75 P.2d 644: "The law applicable to the disputed questions is solely the law of contracts, and in that connection it is elementary that parties to a contract are entitled to have the agreement enforced according to its terms. When, of course, a contract is uncertain and ambiguous it becomes the duty of the court to determine, if possible, what is intended, but in the absence of such ambiguity and uncertainty, and when the contract is in all respects valid, the power of the court is limited to enforcing such contract according to its terms. In that connection it might be appropriately observed that: 'It is competent for the parties to make whatever contracts they may please, so long as there is no fraud or deception or infringement of law. Hence the fact that the bargain is a hard one will not deprive it of validity.' Herbert v. Lankershim, 9 Cal.2d 409, 71 P.2d 220, 253." 24 Cal.App.2d at page 513, 75 P.2d at page 648.

The courts of California, in interpreting the words of a contract of insurance, have applied the general rule set forth in the California Civil Code, § 1644, which reads: "The words of a contract are to be understood in their ordinary and popular sense".

In Massachusetts Mutual Life Insurance Company v. Pistolesi, 9 Cir., 1947, 160 F.2d 668, Judge Denman adopted the principle as a criterion to follow. He wrote: "In California, insurance policies are so construed", 160 F.2d at page 669, that is, *according to ordinary and popular sense.*

## II

### The Meaning of Words.

But there is one other principle which is to be borne in mind, and that is, where parties to a contract, especially an insurance contract, are dealing with the words of an art, the presumption is that they are used by them in the sense in which they are used in that art. When we speak of "art," we mean the sense in which the word is used in the particular branch of human activity with which the contract deals. So, when that is the case and the word, as used in the art, has a definite meaning, ordinary dictionary definitions do not help us. 12 Am.Jur., Contracts, § 237; Restatement, Contracts, § 235(b). The California Civil Code, § 1645 bids us to interpret technical words "as usually understood by persons in the profession or busi-

ness to which they relate." See, Moran v. Prather, 1875, 23 Wall. 492, 499, 23 L.Ed. 121; Ermolieff v. R. K. O. Pictures, 1942, 19 Cal.2d 543, 550, 122 P.2d 3.

Coming to the contract, we find that in the "Declaration, Item 7," it contains the following statement: "The aircraft will be used only for the following purposes: Private business and pleasure, passenger carrying for hire or reward, rental to others and student instruction."

And, further: "The aircraft will be operated only by the following pilots: Any private or commercial certificated and qualified pilot, also any student pilot while under the supervision of a commercial certificated pilot having a pilot instructors rating issued by the C.A.A."

The "Insuring Agreements," in defining the insured, excluded the persons referred to under clauses (e) and (f).

■ The defendant seeks to draw the distinction between Item 7 of the "Declarations" and clause (f) of III of the "Insuring Agreements," as though the first one were merely a limitation of scope of the use of the airplanes, and the second a condition. I believe the two go together and must be so construed.

■ If there is a conflict between the typed portion added to the contract and the printed portion, which is paragraph (f) of Section III, then a rule of construction applies which considers the typed portion as *a special condition* which *modifies the printed portion.* Restatement, Contracts, § 236(e); 12 Am.Jur., Contracts, § 253; Thomas v. Taggart, 1908, 209 U.S. 385, 389, 28 S.Ct. 519, 52 L.Ed. 845; The Idefjord, 2 Cir., 1940, 114 F.2d 262, 266; California recognizes this principle. Cal.Civil Code, § 1651; Burns v. Peters, 1936; 5 Cal.2d 619, 623, 55 P.2d 1182.

■ We also have the additional rule that our construction should be reasonable and that we should not adopt a construction that would result in absurdity. Restatement, Contracts, § 236(a), (d); 12 Am.Jur., Contracts, § 250; Cohn v. Cohn, 1942, 20 Cal.2d 65, 70, 123 P.2d 833.

The typed portion of this contract shows that the words used were words of art, that the parties were using the words in the sense used by the regulations. We have a direct reference to the ratings issued by the C.A.A. So it is quite evident they were writing this contract with reference to them and were not using Webster's Unabridged Dictionary. *They were using words which had definite meanings in the regulations.*

And when they referred to the fact that the aircraft covered was to be operated only *by private or commercial certificated and qualified pilots,* and also any student pilot while under the supervision of a commercial certificated pilot, they used those three phrases in the sense in which they are used in the regulations.

The record in this case shows that Mr. Brown had a private certificated license. *He was not a student pilot.* He was a person who had satisfied the requirements for a certificate. As he wished to change to a commercial certification, he needed additional instruction. This he proceeded to secure.

While so doing, he was still a private certificated pilot. And not until he had satisfied the authorities that he was entitled to the broader license did he lose his standing as a private certificated pilot. If he had secured the higher rating, this certification would have been taken away and he would have ceased to be a private certificated pilot.

I am of the view, therefore, that, in the light of the facts before us and the language of this section, the word "student" in Section III, paragraph (f), cannot apply to the situation here. That word implies a novice, a person who has no standing as a pilot, and who is merely receiving instructions. It is the same as a student driver, under the California Motor Vehicle Act, who is one who is given a learner's certificate or instruction permit, which enables him to sit at the wheel of a vehicle and receive instructions in driving, so long as he has someone along who directs him. That learner's certificate is picked up as soon as the learner has passed his driving test and the test on the Motor Vehicle Act, and it is

replaced by a regular driver's license. California Vehicle Code, § 253.

A person who already has one type of pilot's license, and who seeks additional instruction to secure a higher license, is in the same position as a seaman, an able-bodied seaman, who seeks a higher rating in the Merchant Marine. He must take an examination to satisfy the authorities that he is entitled to the higher rating. The first question we ask him, as a seagoing man, is, "What papers do you carry?" The answer will be second mate, first mate, or apprentice seaman, able-bodied seaman. Each of them is a stage of development in the craft. By the same token, each of them is a distinct category, so recognized by maritime law.

I am of the view that the limitation of liability to "student pilots" was clearly intended to apply to persons who take their first instructions before they secure *any license* which entitles them to operate a plane. It was not intended to cover a person who already had a license as a private certificated pilot. If the phrase were not interpreted in this manner we would have this anomalous situation: We have a person who is specifically designated as one of the types of persons who is *allowed* to operate this aircraft and as to whom the insurance is in full force, and yet we would have third persons being deprived of the benefits of this policy, which specifically designates the tort feasor, by reason of the fact that, elsewhere in the policy, there is a word which, if interpreted, not in the sense in which the word is interpreted in the art, but in the sense in which it is defined in the dictionary, might exclude the person.

I agree, of course, that the word "student" is broad enough to cover anyone who studies. It may apply to any one who receives instruction, or tuition from someone else.

Suppose a lawyer of experience or a judge should decide to teach a course in International Law, and in preparation for it should enroll in a "refresher course" under an authority on the subject, it could not be contended that a policy that referred to law students would cover him, or that a clause which spoke of "apprentices in law" would. Yet in the dictionary meaning anyone who is trying to develop a skill, *which he does not possess,* may be an apprentice for that particular purpose.

I am satisfied that to interpret the contract as the defendant contends, would result in a contradiction between the clause which excludes students and the clause which specifically provides that a person who has the type of license which Mr. Brown had can operate the airplane. Assuming such contradiction, we must interpret it in favor of the insured. And such interpretation would also be commanded by the rule that typewritten portions of a document, put in specifically in the preparation of the particular instrument, are to be given greater weight than the printed portions, and if there is a conflict between the two it is to be assumed that by the typewritten portion it was intended to modify the general clauses which are contained elsewhere.

## III

### The "Renter" Clause.

Neither does the renter clause help the defendant. Section 1925 of the California Civil Code defines "hiring" as follows: "Hiring is a contract by which one gives to another the temporary possession and use of property, other than money, for reward, and the latter agrees to return the same to the former at a future time."

The section dates back to 1872.

This general definition is modified by Section 1930, of the same code, which reads, "Thing let for a particular purpose. When a thing is let for a particular purpose the hirer must not use it for any other purpose; and if he does, he is liable to the letter for all damages resulting from such use, or the letter may treat the contract as thereby rescinded."

In one sense, anyone who is allowed to use the property of another, as the result of a contract of employment may be said to be a hirer. For instance, my secretary is permitted, under the law of the United

States, to use a typewriter which the Government furnishes. In one sense, if a question of liability arose, it could be said, so far as her relationship to the machine is concerned, she "hires" it. She is allowed to use it temporarily. It is a bailment. But her relationship to the Government and to me is not determined by the incidental fact that, as part of her secretarial duties, she is allowed to use this typewriter. Her relationship to the Government and to me is determined by the agreement which lays down the conditions of her employment. And the mere fact that incidentally she is allowed to use, temporarily, property, the safety of which she is charged with, would not turn the agreement into a contract of hire.

We now come to the contract under which the instruction was being received. It is called "Contract for Education and Training—Public Law 346, Seventy-Eighth Congress, as Amended." and provides:

"This contract made as of this 25th day of June, 1947, between the Veterans Administration and Phipps Flying Service (hereinafter referred to as the Contractor), an institution established and existing under the laws of the State of California and located at El Monte Airport, El Monte, California

"Witnesseth:

"Whereas, the Veterans Administration is authorized to pay for such courses of education and training as eligible veterans may elect under and within the limits of Public Law 346, as amended [38 U.S.C.A. § 693 et seq.], and

"Whereas, the Contractor has been properly approved as being qualified and equipped to furnish education and training under Public Law 346, as amended, by The State Department of Education, State of California

"Now, Therefore, in consideration of the promises and mutual covenants and agreements hereinafter contained, the parties hereto do mutually agree as follows:

"Article 1. Instruction.

"(a) The Contractor will provide instruction and the necessary books, supplies, and equipment therefor, as set forth in paragraphs (b) and (c) hereof during the period beginning July 1, 1947 and ending June 30, 1948 for such eligible veterans who choose to enroll in and are accepted or retained in courses provided by the Contractor according to the standards of the Contractor and who are approved by the Veterans Administration as entitled to education and training under Public Law 346, Seventy-eighth Congress, as amended.

"(b) The Contractor will provide such courses of instruction at the charges listed and described in Schedule 1 attached hereto or as set forth in the catalogs, bulletins, or other publications or schedules which are submitted herewith and identified in Schedule 1 as a part of this contract.

"(c) The Contractor will furnish outright to the veteran, as needed, such books, supplies, and equipment as are necessary for the satisfactory pursuit and completion of the courses as referred to in paragraph (b) above. It is understood and agreed that the books, supplies, and equipment to be so furnished will consist of those items required, but in no instance greater in variety, quality, or amount than are required by the Contractor to be provided personally by other and all students pursuing the same or similar courses."

Then follow other clauses which do not interest us, which relate to compensation for books, supplies, and equipment, method of payment, limitation of $500 for individual course, and providing for records and reports on individuals, for inspection, and for proration of charges.

Article 6 is called "Termination," and Article 7 is denominated "Limitation."

There follows, as a part of the contract, a typewritten portion describing the rates, giving the maximum length of the complete course in terms of weeks, a minimum in terms of weeks, and the cost of instruction, which, for flight instruction in 65 H.P. aircraft, specifies: Dual at $10.86 per hour, and Solo at $7.86 per hour.

Then the contract specifies the cost of the ground instruction, the books and supplies, and the total cost of the course, which is: flight instruction, a maximum of $395.40 and a minimum of $320.10, and for ground

instruction a maximum of $30 and a minimum of $30. There is also a maximum for books, supplies, and equipment.

The commercial pilot course and other courses are then catalogued.

 This contract is *properly* a contract for education. The Government agreed with the operator of the school that he should furnish this instruction which the Congress of the United States, out of its sense of gratitude to those who served in the armed forces, ordered the government to pay. 38 U.S.C.A. § 693 et seq.

There is no direct provision designating the airplanes which are to be used. I presume that one cannot perform *a solo flight* except in an airplane. The possibility of having a flight in a dummy, I presume, might call for a dummy plane. But this contract is a contract for education, and the airplane to be furnished and the supplies, which are listed along with the books and other equipment, are the media through which the instruction is to be imparted.

So the mere fact that incidental to the instruction, as a part of it, there is use by the student of an airplane, does not change the contract into a contract for hiring, any more than the fact—using the same illustration—that my secretary, in the performance of her duties, uses a typewriter, changes the contract which she has entered into with the Government into a contract for the hiring of a typewriter. It is an employer and employee relationship. So the relationship in this action, under the contract, is that of master and pupil.

In determining the application of this contract we have to characterize the relationship according to the conditions which the parties themselves, at the time, laid down. And because one facet of the relationship involved the temporary use of an airplane, which might, in a dictionary sense, be called a hiring, we cannot transform a contract to furnish education and instruction into a contract of hiring, in order to bring it within a rule which says that the insurance policy shall not apply to hiring. And this is especially true when the policy specifically states that a person who has a private pilot's license is permitted to operate the plane.

I am of the view that the contract of insurance involved here covered the particular liability, that the death of the deceased was caused while the plane was being operated by a person who had a right to operate it, and that, whether we apply the law of California or the law of the United States, the result is the same.

These observations may be closed with the words of Mr. Justice Stone in Aschenbrenner v. United States Fidelity & Guaranty Co., 1934, 292 U.S. 80, at page 84, 54 S.Ct. 590, 592, 78 L.Ed. 1137: "The phraseology of contracts of insurance is that chosen by the insurer and the contract in fixed form is tendered to the prospective policyholder who is often without technical training, and who rarely accepts it with a lawyer at his elbow. So if its language is reasonably open to two constructions, that more favorable to the insured will be adopted, * * * and unless it is obvious that the words are intended to be used in their technical connotation they will be given the meaning that common speech imports."

 I have already pointed to the fact that the words used were words which had gone into the common speech of those in the craft. The contract was drawn with full knowledge of the federal regulations and with references to the authority which promulgated them. So that the interpretation of the words must be that which is consistent with the regulations and the educational purposes of the contract under which the flight took place.

Judgment will be for the plaintiffs, as prayed for in the complaint.