**KANSAS CITY FIRE & MARINE IN-SURANCE COMPANY, a corporation, Plaintiff,**

v.

**Wayne A. CLARK, the Montana Power Company, a corporation, Lew Chevrolet Company, a corporation, and Clarence G. Madsen, Defendants.**

**Civ. No. 344.**

United States District Court
D. Montana,
Billings Division.
May 14, 1963.

232

Cooke, Moulton, Bellingham & Longo, Billings, Mont., for plaintiff.

Crowley, Kilbourne, Haughey & Hanson; Anderson, Symmes, Forbes, Peete & Brown; Jones & Olsen and Harlow Pease, Billings, Mont., and J. H. McAlear, Red Lodge, Mont., for defendants.

JAMESON, District Judge.

In this diversity case plaintiff insurer seeks a declaratory judgment under 28 U.S.C.A. § 2201 limiting coverage under a combination aircraft policy to the named insured, Al Forhart Flying Service. Al Forhart, doing business as Al Forhart Flying Service, was engaged in an aviation business which offered charter and air taxi service and student pilot instruction, including the instruction of private pilots to qualify them for commercial licenses.

Forhart purchased a Cessna aircraft from Lynch Flying Service. In connection with the sale and financing, Charles Lynch, an officer of Lynch Flying Service and also a licensed agent for plaintiff, solicited a policy of insurance covering the aircraft. Following oral negotiations between Forhart and Lynch and telegraphic communications between Lynch and plaintiff's general agent, a written application was signed by Forhart. The policy in question was then issued, insuring the aircraft against loss or damage and against liability for claims on account of bodily injuries and property damage arising out of the operation of the aircraft.

The present controversy arose as the result of a crash of the insured aircraft in Red Lodge, Montana, on July 29, 1960, while the plane was piloted by defendant Wayne A. Clark. The defendant Clarence G. Madsen was riding as a passenger, together with A. M. Sheffield and his son, Darrell, who are not parties to this action.

Clark held a private pilot's license and was taking instruction from Forhart for the purpose of upgrading this license to a commercial license. In order to qualify for a commercial license it was necessary to have a certain amount of "dual" instruction as well as to fly a number of "solo" hours. A private pilot may carry passengers as long as he does not do so for hire, and it is important, in order to obtain a commercial license, that the pilot experience flying with a plane-load of passengers so that he may establish ability in that respect.

Clark was sales manager for defendant Lew Chevrolet Company. On the day of the accident, he received a call from a dealer in Red Lodge inquiring as to Lew's stock of cars. Sheffield had wrecked his automobile and was interested in purchasing another, but the stock of the Red Lodge dealer was insufficient. Clark decided at first to drive to Red Lodge, but later decided to wait until the close of the working day so that he could get in some flying time. He called Forhart and determined that the plane was available. Madsen, a fellow employee, was invited to accompany Clark.

At the airport Clark "checked out" with Forhart, who gave him routine instructions and advised him to watch the temperature and its effect upon the air density. Forhart told Clark about the Red Lodge airport and gave him general information and instructions before he took off.

In Red Lodge Clark met with Sheffield, who, with his son, decided to accompany Clark back to Billings to view the stock of Lew Chevrolet Company. On the take-off at the Red Lodge airport, the plane struck wires of the defendant Montana Power Company and crashed, injuring all persons in the plane and wrecking the aircraft. Claims have been asserted by Sheffield against Forhart and the defendants Clark, Lew Chevrolet Company and Montana Power Company, as well as others. Madsen has asserted a claim against Clark. Plaintiff has admitted coverage for Forhart but has denied coverage for Clark.

Pertinent provisions of the insurance policy, upon which the parties rely, are contained respectively in the so-called Declarations, Insuring Agreements, Exclusions and Conditions.

Item 6 of the *Declarations* reads:

"The aircraft will be used only for the purposes indicated by 'X':

"☐ (a) 'Pleasure and Business'. The term 'Pleasure and business' is defined as Personal and Pleasure use and use in direct connection with the Insured's business, excluding any operation for which a charge is made and excluding any operation of the aircraft by a student pilot;

"☐ (b) 'Industrial Aid'. The term 'Industrial Aid' is defined as including the uses enumerated in the definition of 'Pleasure and Business' and also includes transportation of executives, employees, guests and customers, excluding any operation for which a charge is made;

"☐ (c) 'Limited Commercial'. The term 'Limited Commercial' is defined as including all the uses permitted in (a) and (b) above and including Student Instruction and Rental to pilots but excluding passenger carrying for hire or reward;

"☒ (d) 'Commercial Ex Instruction'. The term 'Commercial Ex Instruction' is defined as including all of the uses under (a) and (b) above and use of the aircraft for the trans-portation of passengers and/or freight for hire but excluding any use of the aircraft for instruction or rental to others;

"☐ (e) 'Commercial'. The term 'Commercial' is defined as including all the uses permitted under (c) and (d) above;

"☒ (f) 'Special Uses'. The term 'Special Uses' is defined as STUDENT INSTRUCTION."

The "X" before (d) and (f) and the words "STUDENT INSTRUCTION" are typewritten. The balance of Item 6 is printed.

Item 7 of the *Declarations* reads: "SEE ENDORSEMENT NUMBER 3". General Endorsement No. 3 reads:

"IN CONSIDERATION OF THE PREMIUM AT WHICH THE UNDERMENTIONED POLICY IS WRITTEN IT IS HEREBY UNDERSTOOD AND AGREED THAT IN THE SPACE PROVIDED IN ITEM #7 OF THE UNDERMENTIONED POLICY DECLARATIONS THE FOLLOWING SHALL BE INSERTED:

"A. WHILE THE AIRCRAFT IS BEING USED FOR PURPOSES OF STUDENT INSTRUCTION: "STUDENT PILOTS WHILE UNDER THE DIRECT SUPERVISION AND CONTROL OF A PROPERLY CERTIFICATED INSTRUCTOR PILOT.

"B. WHILE THE AIRCRAFT IS BEING USED FOR PURPOSES OF BUSINESS AND PLEASURE AND TRANSPORTATION OF PASSENGERS FOR HIRE:
"AL FORHART"

The foregoing is all typewritten, followed by printing which reads:

"Nothing herein contained shall vary, alter, waive or extend any of the terms, representations, conditions or agreements of the Policy other than as above stated."

Following the typewritten words "See Endorsement Number 3", Item 7 continues in printing, "only will operate the aircraft while 'in flight' and while holding proper certificate(s) as required by the Civil Aeronautics Authority".

The *Insuring Agreements* contain as paragraph III the following:

"III. Definition of 'Insured'

"The unqualified word 'Insured' wherever used in this Policy with respects to Coverages A, B, C and D, includes not only the Named Insured but also any person while using or riding in the aircraft and any person or organization legally responsible for its use, provided the actual use is with the permission of the Named Insured.

"The provisions of this paragraph do not apply:

\*　　\*　　\*　　\*　　\*　　\*

"(d) to any person operating the aircraft under the terms of any rental agreement or training program which provides any remuneration to the Named Insured for the use of said aircraft."

"The *Exclusions* include the following provisions:

"This Policy does not apply:

\*　　\*　　\*　　\*　　\*　　\*

"2. to any occurrence or to any loss or damage occurring while the aircraft is operated, while in flight, by other than the pilot or pilots set forth under Item 7 of the Declarations.

"3. to any Insured:

\*　　\*　　\*　　\*　　\*　　\*

"(b) who operates or permits the operation of the aircraft for instructional purposes unless such purposes are stated in the Declarations;

\*　　\*　　\*　　\*　　\*　　\*

"(d) who operates or permits the aircraft to be operated for any unlawful purpose or any purpose other than as specified in the Declarations."

Paragraph 5 of *Conditions* reads: "Severability of Interests—Coverages A, B, C and D—The term 'the Insured' is used severally and not collectively, but the inclusion herein of more than one Insured shall not operate to increase the limits of the Company's liability."

Plaintiff contends: (1) the policy is unambiguous and under its plain terms affords coverage for Forhart's interest and operations, but may not be construed to afford coverage for Clark; (2) Clark was flying the aircraft for the purposes of business and pleasure in violation of part B of Endorsement 3; (3) Clark was a student undergoing training for a commercial license and the omnibus clause (Clause III of the Insuring Agreements) accordingly is not applicable by reason of provision (d); (4) assuming that Clark could be held an insured, he was not under the "direct supervision and control" of his instructor while on this flight, as required by Part A of Endorsement 3.

Defendants contend: (1) Clark was a pilot contemplated and authorized by General Endorsement No. 3 and Item 7 of the Declarations and the use he was making of the plane was a use contemplated in Item 6; (2) Clark was an omnibus insured under Insuring Agreement III and was not engaged in a "training program" within the contemplation of subparagraph (d); (3) the policy as written is fairly susceptible to the construction urged by the defendants and the construction favorable to the insured should be adopted; (4) the policy as written is vague, uncertain and ambiguous and if, in order to ascertain the intent of the parties reference is made to the oral negotiations and written documents, including telegrams and the written application for insurance coverage, this evidence discloses an intent to extend coverage to omnibus insureds such as Clark; and (5) if it is necessary to reform the policy to express that intent more clearly or to estop plaintiff from denying that intent, the evidence concerning the negotiations and the exhibits are ample support for this result.

■ Before proceeding with an analysis of the evidence bearing upon the respective contentions of the parties, it seems advisable to call attention to the general rules applicable to the construction of insurance contracts, which are well settled in Montana. Where a contract is uncertain or ambiguous and requires construction, and the contract is fairly susceptible of two constructions, one favorable to the insurer and the other favorable to the insured, the one favorable to the insured will be adopted.[1] The reasons for this rule were well summarized in Montana Auto Finance Corp. v. British & Federal Fire Underwriters, 1924, 72 Mont. 69, 75, 232 P. 198, 200, 36 A.L.R. 1495, as follows:

> "It is a matter of common knowledge that insurance companies prepare their own contracts of insurance * * *. They do not permit the insured to have a voice in the drawing of his own contract; nor does he negotiate with reference to its terms in the sense that negotiations are carried on before agreements are reached in ordinary contracts. Joyce on Insurance, p. 594. Policies of insurance are invariably complex and are understood by laymen with difficulty, and as a result the insured generally makes a request for the kind of insurance he desires and then signs 'on the dotted line' upon a formidable appearing printed form with the provisions of which the average assured has slight, if any, acquaintance. The policies are prepared by skilled lawyers retained by the insurance companies, who through years of study

and practice have become expert upon insurance law, and are fully capable of drawing a contract which will restrict the scope of the liability of the company with such clearness that the policy will be free from ambiguity, require no construction, but construe itself. Because of reasons such as these, whenever the contract of insurance is so drawn as to be ambiguous, uncertain, and to require construction, the courts of this country resolve the doubt in favor of the insured and against the insurer, in accordance with the rule contra proferentem." [2]

■■ On the other hand, if the intention of the parties is clear, the courts have no authority to change the contract in any particular, or to disregard the express language the parties have used. In James v. Prudential Ins. Co., 1957, 131 Mont. 473, 477, 312 P.2d 125, 127, the court said: "But even though it is a cardinal principle of insurance law that a contract of insurance is to be construed liberally in favor of the insured and strictly against the insurer, contracts of insurance should be given a fair and reasonable construction. Park Saddle Horse Co. v. Royal Indemnity Co., 81 Mont. 99, 111, 261 P. 880. In arriving at such construction, no matter how strictly construed against the insurer, the intention of both insurer and insured is to be ascertained from the language of the policy. R.C.M.1947, § 13–704. Effect must be given to every part of the policy contract. R.C.M.1947, § 13–707. The words of the contract are to be understood in their usual meaning. R.C.M. 1947, § 13–710. Common sense controls."

1. See Park Saddle Horse Co. v. Royal Indem. Co., 1927, 81 Mont. 99, 111, 261 P. 880, and cases there cited; Aleksich v. Mutual Benefit Health & Accident Ass'n, 1945, 118 Mont. 223, 164 P.2d 372, 162 A.L.R. 263; Libby Lumber Co. v. Pacific States Fire Ins. Co., 1927, 79 Mont. 166, 174, 255 P. 340, 60 A.L.R. 1; Fayle v. Camden Fire Ins. Ass'n, 1929, 85 Mont. 248, 254, 278 P. 509; Cacic v. Slovenska Narodna, etc. et al., 1936, 102 Mont. 438, 442, 59 P.2d 910. See also Prudential Insurance Company of America v. Barnes,

9 Cir., 1960, 285 F.2d 299; Peerless Casualty Co. v. Mountain States Mut. Cas. Co., 9 Cir., 1960, 283 F.2d 268; United States v. Eagle Star Ins. Co., 9 Cir., 1953, 201 F.2d 764; Matsuo Yoshida v. Liberty Mutual Insurance Co., 9 Cir., 1957, 240 F.2d 824; Petro v. Ohio Cas. Ins. Co., S. D.Cal.1950, 95 F.Supp. 59.

2. The foregoing was quoted with approval in Keating v. Universal Underwriters, 1958, 133 Mont. 89, 96, 97, 320 P.2d 351.

Moreover, "[a]mbiguity does not exist just because a claimant says so. It can only exist where the wording or phraseology of a contract is reasonably subject to two different interpretations." Holmstrom v. Mutual Benefit Health & Accident Ass'n, 1961, 139 Mont. 426, 364 P.2d 1065, 1066.[3]

Was Clark a pilot contemplated and authorized by Item 7 of the Declarations (as set forth in Part A of Endorsement 3) and was the use he was making of the aircraft one contemplated by Item 6 of the Declarations? In other words, was the aircraft being used for purposes of "student instruction" and flown by Clark as a student pilot under the direct supervision and control of Forhart? It is my conclusion that those questions must be answered affirmatively.

Clark would have made the 60 mile trip to Red Lodge in any event. Because of the short distance involved the trip could easily have been made by automobile. Insofar as the business of Lew Chevrolet Company was concerned, there was no reason for Clark to make the flight and his doing so was of no advantage to his employer. The only reason for taking the aircraft instead of driving one of his employer's cars was for Clark to put in some flight time.[4] The flight was of such character as to be within the scope of the instruction Clark was receiving. As noted supra, he received information and instructions from Forhart before he left Billings.

But plaintiff contends that because Clark intended to attempt an automobile sale, the plane was being used, "whether primarily or not", for "business and pleasure" while being piloted by someone other than Al Forhart, and accordingly there is no coverage by reason of Part B of Endorsement 3. By its very contention, plaintiff points to the ambiguity of the phrase, "business and pleasure" standing alone. Does business and pleasure refer to use of the craft in Forhart's air charter and taxi service and to uses other than student instruction? Or to any flight, including one for the purpose of student instruction, which might have as an incident *any* business and/or pleasure purpose? The latter construction appears unreasonable on its face, and its adoption would lead to absurd results. Assume, for example, that one of Forhart's students needed to take a cross country flight as part of his instruction. Under the construction plaintiff urges the student would be required to choose a destination in which he had no interest. If he chose a place at which he might visit friends or relatives or conduct a business transaction the use of the craft would be unauthorized.

Plaintiff relies strongly upon the provisions of subdivision (a) of Item 6 of the Declarations, which defines "Pleasure and Business" as "Personal and Pleasure use and use in direct connection with the insured's business, excluding any operation for which a charge is made

---

3. See also Aleksich v. Mutual Benefit Health & Accident Ass'n, supra, 118 Mont. 223, 229, 164 P.2d 372, 162 A.L.R. 263; Bruce v. Lumbermen's Mutual Casualty Company, D.N.C.1954, 127 F.Supp. 124, 128, aff'd 4 Cir., 222 F.2d 642; Petro v. Ohio Cas. Ins. Co., supra.

4. In a statement taken by plaintiff and received in evidence as defendant's exhibit 8, Clark said in pertinent part: " * * * I decided first to drive down, but afterwards I decided to wait until after work so that I could get an hour or so flight time. I could have driven down and back in about the same time as flying, but I was anxious to build up some flight time so decided to fly. * * * While I was going to try to make a sale in Red Lodge

at the time, my reason for flying was to build up time toward my commercial license. As far as I was concerned, I was a student under Al Forhart's instruction. * * * Under the instruction procedure for a commercial license, some of the training is under dual instruction, while the rest is solo, under the direction of the instructor. The flight to and from Red Lodge would be flight time under the direction of the instructor, Al Forhart. At that time I was a student pilot under instruction. Under solo flight training mentioned above by saying that the solo flight training was under the direction of the instructor, I mean that the instructor gave instructions and direction before the take off."

and excluding any operation of the aircraft by a student pilot". Plaintiff argues that this declaration prohibits a student pilot from flying the aircraft on business and pleasure and that in this case there was at least an incidental business use.

Item 6 provides that the aircraft will be used only for the purposes indicated by an "X". The "X" in subdivision (d) includes the purpose set forth in (a). Plaintiff makes no reference to subdivision (f) entitled "Special Uses", also checked with an "X", and followed by the typewritten words "STUDENT INSTRUCTION". Obviously the printed definition in 6(a) must be construed with 6(f) and also with both A and B of Endorsement 3, which are likewise typewritten. Paragraph A authorizes student pilots under the direct supervision and control of the instructor to operate the aircraft while it is used for purposes of student instruction, the use authorized by 6(f). Paragraph B authorizes operation by Forhart for purposes of business and pleasure and transportation of passengers for hire. Item 6(a) authorizes the use of the aircraft for business and pleasure and defines this term as used in paragraph B.

 As set forth above, it is my conclusion that where the flight is for the purposes of "student instruction" pursuant to Item 6(f) and paragraph A of Endorsement 3, the term "business and pleasure" does not extend to an incidental benefit to the pilot and preclude coverage for him.[5] But it is not necessary to belabor the meaning of the policy language to dispose of plaintiff's contention. The construction in favor of coverage appears more reasonable than that against it and must be adopted under the rules of construction discussed supra.[6]

Exclusions 2, 3(b) and 3(d), supra, need not be considered independently, as their applicability depends upon the construction of the Declarations.

We turn now to plaintiff's contention that the policy was written to afford coverage to Forhart, his interests and operations, but may not be construed to extend liability coverage to Clark. In effect plaintiff asserts that Forhart is the only "insured" under the policy. In taking this position plaintiff urges that Items 6 and 7 of the Declarations merely delimit the uses to which the aircraft may be put and the persons who may operate it, for the purpose of affording coverage to Forhart, the named insured. Plaintiff then would apply exception (d) of the omnibus clause, Insuring Agreement III, supra, to exclude a student as a "person operating the aircraft under the terms of any * * * training program".

Clark would be an insured under the omnibus clause unless he was operating the aircraft under the terms of a "training program". The words "training program" are not defined. They appear in the printed portion of the policy, but must be construed with other policy provisions in the light of the particular circumstances here presented. Standard dictionaries give no aid in their application.

Plaintiff argues that it appears from the testimony of Clark and Lynch that Clark was engaged in a "training program", relying upon Clark's statement in Exhibit 8 (footnote 4) that he was a student pilot * * * "under solo flight training" and Lynch's testimony that Forhart told him that he would be using the plane "for training purposes and charter business". This testimony does not evidence a training *program*. In his answer to requests for admission Clark said specifically: "I was never engaged in any 'training program' with Al For-

---

5. The conflicting constructions of these and other policy provisions contained in the able and comprehensive briefs of counsel on both sides and the difficulty the court has experienced in reconciling the various policy provisions perhaps furnish the best evidence that the policy provisions are ambiguous and uncertain.

6. See Continental Cas. Co. v. Warren, 1953, 152 Tex. 164, 254 S.W.2d 762; Bruce v. Lumbermen's Mutual Casualty Company, supra, 127 F.Supp. 124, 127.

hart and there never was any 'training program' with him as I understood the words 'training program' to mean." Plaintiff did not offer any evidence with respect to the meaning of the words "training program" as used in aircraft policies.

Taken by itself, the phrase "training program" might be construed either as a course of pilot instruction for an individual student, or as a formal instruction program sponsored by a federal or state agency, such as the "Civilian Pilot Training Program" involved in Le Blanc v. American Employers' Ins. Co., 5 Cir., 1946, 155 F.2d 969. See also 36 U.S.C.A. § 202; 10 U.S.C.A. §§ 9305, 9384, 9411–9413 and 9441. Obviously, one of those constructions would favor the insured and the other the insurer. Both appear equally reasonable.

■■ When one compares the phrase "training program" with the remainder of the policy, particularly the language of the typewritten Endorsement No. 3, it becomes even more confusing and ambiguous. Clark's use of the aircraft was authorized and denominated by the Declarations as "STUDENT INSTRUCTION". It would be a liberal construction indeed to equate "training program" with "student instruction", particularly in view of the fact that this construction would result in an exception or exclusion from coverage. The courts do not so indulge insurers. Exclusions and words of limitation must be strictly construed against the insurer.[7]

It will not be assumed that "student instruction" and "training program" are the same. On the contrary, it appears that they must have different meanings; else why the different terminology? It seems reasonable that if the parties intended to remove those persons authorized to fly the aircraft under the Declaration from the omnibus insured clause, they would have used the same terms to exclude them as were used to include them. In other words, had the clause intended to except Forhart's students it should have referred to persons operating the aircraft for purposes of "student instruction".

■ The Montana courts, as well as courts of other jurisdictions, have held repeatedly that if any insurer desires to limit coverage to a particular risk, it ought clearly and unequivocally to so provide in its policy.[8] Most of plaintiff's contentions boil down to one, i. e., that only Forhart was insured by the policy. If in fact this was intended, it would have been very simple to insert the provision, "Al Forhart (named as Al Forhart Flying Service) is the only person insured by this policy", or words to that effect.

Defendants rely upon Petro v. Ohio Cas. Ins. Co., S.D.Cal.1950, 95 F.Supp. 59, involving the construction of policy declarations similar to those in the instant policy.[9] The omnibus clause in the Petro policy defining "insured" specified that it did not include "any person who is a student or renter pilot". In deciding that the policy afforded coverage to the operator of the aircraft, the court first held that the operator was not a student or renter within the exception

7. See Continental Cas. Co. v. Warren, supra; Insurance Co. of North America v. General Aviation Supply Co., 8 Cir., 1960, 283 F.2d 590; Great American Indem. Co. of New York v. Saltzman, 8 Cir., 1954, 213 F.2d 743.

8. See Park Saddle Horse Co. v. Royal Indemnity Co., supra; Johnson v. Continental Cas. Co., 1953, 127 Mont. 281, 283, 263 P.2d 551; Keating v. Universal Underwriters, supra; Continental Cas. Co. v. Warren, supra.

9. Item 7 of the Declarations there stated:
 "The aircraft will be used only for the following purposes: Private business and pleasure, passenger carrying for hire or reward, rental to others and student instruction.
 "The aircraft will be operated only by the following pilots: Any private or commercial certificated and qualified pilot, also any student pilot while under the supervision of a commercial certificated pilot having a pilot instructors rating issued by the C.A.A."

to the omnibus clause.[10] The second ground of the decision is pertinent here. Judge Yankowich there said: "The defendant seeks to draw the distinction between Item 7 of the 'Declarations' and clause (f) of III of the 'Insuring Agreements,' as though the first one were merely a limitation of scope of the use of the airplanes, and the second a condition. I believe the two go together and must be so construed." 95 F.Supp. at 62. Judge Yankowich construed the Declarations as including the pilot as an insured. The resulting conflict between the Declarations and the student or renter exception was resolved against the insurer as follows:

"I am satisfied that to interpret the contract as the defendant contends, would result in a contradiction between the clause which excludes students and the clause which specifically provides that a person who has the type of license which Mr. Brown had can operate the airplane. Assuming such contradiction, we must interpret it in favor of the insured. And such interpretation would also be commanded by the rule that typewritten portions of a document, put in specifically in the preparation of the particular instrument, are to be given greater weight than the printed portions, and if there is a conflict between the two it is to be assumed that by the typewritten portion it was intended to modify the general clauses which are contained elsewhere." 95 F. Supp. at 63.

If Petro v. Ohio Cas. Ins. Co. be followed, plaintiff's contention must fail even if we assume that Clark was operating the aircraft under the terms of a "training program". In principle this case cannot be distinguished from Petro. The Declarations here are framed in precisely the same manner as those there involved, and the same contradiction would arise. Here, as there, the meat of the Declarations is typewritten while the omnibus clause and its exceptions are printed. And of course, the rule is applicable that ambiguities must be resolved against the insurer.[11]

In view of my conclusion that the policy affords coverage to the pilot Clark, it is unnecessary to consider the application for insurance and other extrinsic evidence offered in aid of construction of the insurance contract.

Defendants contend further that plaintiff may not rely upon Exclusion 2,[12] since it has accepted coverage for the hull damage and has accepted coverage for Forhart in this action and dismissed him with prejudice. It is argued that if Clark as pilot and his use of the aircraft were not within the contemplation of Item 7 of the Declarations, no loss or damage resulting was covered by the policy. I have some question as to whether the acceptance of coverage as to Forhart would in itself be binding upon plaintiff in this action, as defendants contend (a question which it is unnecessary to determine), but certainly the construction which plaintiff has placed upon the policy in accepting coverage for the occurrence is consistent with the conclusion that Clark was a student pilot using the aircraft for purposes of student instruction within the contemplation of Item 7.

Pursuant to Rule 11(b) of the local rules of court, defendant Clark will prepare, serve and submit proposed findings of fact and conclusions of law, and lodge form of judgment.

10. It is true, as plaintiff contends, that Petro in many respects is distinguishable from the instant case. The same is true of other cases construing aircraft policies cited by both parties.

11. While not binding upon this court, the Petro case is a decision of another court in this circuit and is persuasively written. Even if the construction of Petro were

not followed, however, the result here would be the same, in view of my conclusion that the words "training program" in the exception to the omnibus clause are ambiguous, and the ambiguity must be resolved in favor of the insured.

12. This Exclusion is set forth at page 4, supra.