CORA STANBACK v. WINSTON MUTUAL LIFE INSURANCE COMPANY.

(Filed 10 December, 1941.)

**1. Insurance § 13a—**

A contract of insurance will be construed from its four corners to ascertain and give effect to the intention of the parties as expressed in the language used, and its clear and unambiguous terms must be given their plain, ordinary and popular sense.

**2. Insurance § 36e—**

Construing the contract of insurance in suit from its four corners, *it is held* that a limitation set forth in a subsequent part of the policy limiting insurer's liability to one-fourth the amount otherwise due if insured should die from pneumonia within twelve months from the date of the policy, applied to a prior provision that insurer should be liable only for one-half the amount of the policy if insured should die during the first six months the policy was in effect, and upon insured's death from pneumonia within six months from the date of the policy, insurer is liable only for one-eighth the face amount of the policy.

**3. Insurance § 13a—**

While rules of punctuation may be used in construing an insurance contract to assist in determining the intent of the parties, the punctuation or absence of punctuation cannot control its construction as against the plain meaning of the instrument.

APPEAL by defendant from *Phillips, J.,* at May Term, 1941, of RICHMOND.

Civil action to recover on policy of life insurance.

The parties having agreed in the court below that the trial judge should hear the case, find the facts and state conclusions of law, "without the intervention of a jury," these facts are presented.

(1) On 30 September, 1940, defendant Winston Mutual Life Insurance Company issued to Sandy Stanback, the insured, 27 years of age at his next birthday, its policy of life insurance No. 29298, effective at noon on said date, and in which his mother, Cora Stanback, plaintiff herein, is beneficiary. In the policy the Insurance Company agreed, "subject to the terms and conditions below and in the following pages hereof, each of which is hereby made a part of this contract and binding on every person entitled to claim hereunder, to pay  .  .  .  the amount stipulated in the schedule below, except as is otherwise provided on this and the following pages, to the beneficiary . . . of the insured . . ."

The schedule above referred to relates, first to "insurance if the insured is ten years of age or over," in which event the "ultimate amount of insurance" is stated to be "$300.00"; and second to "amount of insurance if the insured is under ten years of age." Then, after provisions not pertinent here, these paragraphs follow:

"Preliminary Provision: If, after this policy takes effect, death should occur during the first six months and the insured is ten years of age next birthday or over, no greater amount than one-half of the insurance provided herein shall be paid as a death benefit; if the age of the insured at date of this policy is less than ten years next birthday, the amount payable will be according to the Infantile Table above, except as is provided on the following pages.

"The conditions, privileges, benefits and the concessions to policy holders, and any endorsement either printed or written as made by the Company on any of the following pages are a part of this contract as fully as if recited over the signature hereto affixed."

Then on the next page entitled "PRIVILEGES AND CONDITIONS," is this paragraph: "4. Limitations. If the death of the Insured occurs during the first twelve months from date of this policy resulting directly or indirectly from  .  .  .  pneumonia,  .  .  .  (naming other diseases not pertinent here), one-fourth of the amount will be paid which would be payable under the policy conditions for death resulting from any other natural cause, unless settlement be made under paragraph (a) below; or if the death of the Insured occurs during the first nine months from date of this policy, resulting from pregnancy, childbirth or miscarriage, if legally married, one-fourth of the amount will be paid which would be payable under the policy conditions for

death resulting from any other natural cause. In the case of death of the Insured, resulting directly or indirectly from injury sustained while in the act of violating any Federal, State or Municipal law, or as a punishment therefor, or the culpable or intentional act or negligence of the Insured or Beneficiary hereunder, the liability of this Company shall be limited to an amount not in excess of premiums paid hereon. Military and naval service or any occupation incident thereto in time of war is a risk not assumed under this policy, and if the Insured shall enter or be engaged in any military or naval service or any occupation incident thereto in time of war, and shall die while engaged in or as a result of such service, the liability of the Company under this policy shall be limited to the amount of the full legal reserve to the credit of this policy or to one-fifth of the amount payable hereunder, whichever amount is the greater, unless the Insured shall, within one calendar month from entering upon such service, secure a written permit therefor, to be signed by the President, Vice-President, or Secretary of the Company. An extra premium shall be charged for such permit to be fixed by the Company. Self-destruction within two years from the date hereof, whether the Insured be sane or insane, is not a risk assumed by the Company but in such event the Company will return the premiums actually paid hereon. (a) If the Insured, within two years prior to the date of this policy, has been rejected for insurance by this or any other company, order, or association or has been affected by any complaint or condition necessitating the attention of a physician, or had, during said period, any pulmonary disease, chronic bronchitis, pneumonia, cancer, disease of the heart, blood vessels, liver, or kidney, and death should occur within two years from date hereof, the maximum liability of the Company will not exceed the premiums paid, unless reference to such rejection, or medical attention or treatment, or complaint or condition, or ailment within the two years prior to the date of the policy, is endorsed on this policy by the Company. (b) No benefits will be payable hereunder for death resulting directly or indirectly from the drinking of intoxicating liquor, or drunkenness, immorality, childbirth if unmarried, or venereal disease or as a result directly or indirectly, of an altercation or fight, provoked or unprovoked, or while breaking the law or resisting an officer, or arrest, it being understood and agreed that death resulting from the foregoing causes or any one of them, directly or indirectly, is a risk not covered by this policy; the Company's maximum liability hereunder for any such death, therefore, shall not exceed the premiums paid. Except as is otherwise provided herein, all premiums paid, shall be forfeited to the Company in the event this policy shall become void."

Then on last page this appears: "SPECIAL NOTICE AND PRIVI-
LEGE. The Insured is requested to examine carefully the terms and
conditions of this Policy, and if its terms are not satisfactory, or if its
conditions are not accepted and agreed to, the Policy may be surrendered
for cancellation within one week after its date, at the office of the Com-
pany in the District where this Policy is delivered and all premiums
paid hereon will be returned to the Insured. If not so returned, the
Policyholder shall be deemed to have accepted this Policy and to have
agreed to be bound by its terms and conditions. The acceptance of this
Policy shall be taken as evidence by the Company that it has been
applied for, read, understood, and its terms and conditions agreed to and
accepted by the Insured."

(2) Sandy Stanback died as result of pneumonia on 11 February,
1941, within six months from the date of the execution of the policy of
insurance, at which time he was "over the age of ten years" and the
policy—being in full force and effect—had been in effect less than six
months.

(3) On 1 March, 1941, defendant tendered its check for $37.50 to
plaintiff, as beneficiary, in full payment for the benefits under said
policy, and plaintiff refused the tender.

Upon these facts, the court, being of that opinion, held that under the
terms of the policy, "the beneficiary named therein is entitled to receive
one-half of the full benefit of the insurance provided therein," rendered
judgment in favor of plaintiff and against defendant for $150.00, with
interest and costs.

Defendant appeals therefrom to Supreme Court and assigns error.

*Jones & Jones for plaintiff, appellee.*
*McLeod & Webb for defendant, appellant.*

WINBORNE, J. Appellant concedes that if the insured had died within
six months from the time the policy took effect, as result of any other
natural cause than those enumerated in paragraph "4. Limitations," the
beneficiary would be entitled to recover one-half of the "ultimate amount
of insurance specified in the policy," that is, $150. But it contends that
since the insured died of pneumonia within such period of six months—
pneumonia being one of the causes of death named in said paragraph 4,
the beneficiary would be entitled to receive only one-fourth of the amount
of $150, which would be payable under the policy for death resulting
from any other natural cause, that is, only the sum of $37.50.

We think this is the correct interpretation of the policy.

"An insurance policy is only a contract, and is interpreted by the
rules of interpretation applicable to other written contracts, and the

intention of the parties is the object to be attained," *Varser, J.,* in *McCain v. Ins. Co.,* 190 N. C., 549, 130 S. E., 186. See, also, *Crowell v. Ins. Co.,* 169 N. C., 35, 85 S. E., 37; *Powers v. Ins. Co.,* 186 N. C., 336, 119 S. E., 481.

In the *Powers case, supra, Adams, J.,* speaking for the Court, said, "But the rule is equally well settled that contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used; and if they are clear and unambiguous their terms are to be taken and understood in their plain, ordinary and popular sense." See, also, *Bray v. Ins. Co.,* 139 N. C., 390, 51 S. E., 922.

"In determining the intention of the parties to an insurance policy, the policy should be considered and construed as a whole, and if it can reasonably be done, that construction will be adopted which will give effect to the whole instrument and to each of its various parts and provisions." 29 Am. Jur., 176, Insurance, 160. In other words, the policy should be taken by its four corners and considered as a whole. *Penn v. Ins. Co.,* 160 N. C., 400, 76 S. E., 262.

Applying these principles, the policy in this case has a clear meaning. If the concluding clause of the "Preliminary Provision," reading "except as is provided on the following pages," relates to amounts payable only in instances where the insured at date of the policy is less than ten years of age at next birthday, "the terms and conditions . . . on the following pages . . .," to which the contract is stated to be subject, particularly the "limitations" in paragraph 4, would have no tangible meaning, and would be nullified. Indeed, it would be strained ruling to hold, as a proper interpretation, that the parties intended to contract with relation to death of a child less than ten years of age (a) "from pregnancy, childbirth or miscarriage, if legally married," or (b) while in act of violating any Federal, State or Municipal law, or as a punishment therefor, or (c) while engaged in military or naval service in time of war.

On the other hand, if the clause be interpreted to relate to all that precedes it in the paragraph entitled "Preliminary Provision," each clause of paragraph 4 "limitations" might reasonably have a subject to which it would apply. Manifestly, when the policy is read as a whole, such is its clear meaning and the patent intention of the parties.

But it is contended by appellee that the first two clauses of the "Preliminary Provision" being separated by a semicolon, each is complete in itself. It is further contended that, hence, the exception being separated from the latter of the two by a comma, qualifies the latter only, and, when tested by the ordinary rules of English grammar, or legal construction, cannot under any circumstances be construed to limit or

modify the first clause. However, in this connection it is the law in this State that although the rules of punctuation may be used to assist in determining the intent of the parties, punctuation or the absence of punctuation in a contract or deed is ineffective to control its construction as against the plain meaning of the instrument. *Bunn v. Wells,* 94 N. C., 67; *Redmond v. Comrs.,* 106 N. C., 122, 10 S. E., 845; *Real Estate Co. v. Bland,* 152 N. C., 225, 67 S. E., 483; 3 A. L. R., 1062, Annotations I and III on "Punctuation as affecting construction of contract."

In accordance with this opinion, the judgment below is
Reversed.