MRS. JANE LASSITER LINEBERRY v. THE SECURITY LIFE & TRUST COMPANY, WINSTON-SALEM, N. C., A CORPORATION.

(Filed 30 September, 1953.)

**1. Novation § 2—**

The fact that the parties have entered into a contract containing certain provisions does not preclude them from thereafter changing or modifying such provisions or substituting conflicting ones in lieu thereof by novation.

**2. Insurance § 13a—**

The objective in construing a policy of insurance is to ascertain the intention of the parties as expressed in the language used, without disregarding any of its words or clauses or inserting words or clauses not used, and if the intent is expressed in clear and unambiguous language such intent must be given effect.

**3. Same—**

The terms of an insurance policy must be given their plain, ordinary and popular connotation unless they have acquired a technical meaning in the field of insurance.

**4. Insurance § 27—Conversion of group certificate into individual policy constitutes novation and not continuance of old insurance.**

Where a policy of group insurance and certificate issued thereunder provide that at the termination of the employment the holder of the certificate should have the right to convert it into any one of the forms customarily issued by the company in an amount equal to the protection under the certificate without evidence of insurability, upon application to the company within a stated period and upon payment of the premium applicable to such policy at his then attained age, and that protection under the group policy should terminate on the date and hour insurance under such individual policy becomes effective, *held* conversion of the insurance under such provision constitutes a novation, and the policy issued under the terms for conversion is a new policy and is not a continuation of the original contract under the group policy. The word "conversion" defined.

**5. Insurance § 29—Where group certificate is converted into ordinary policy, date of issuance of new policy governs incontestability.**

Where a policy of ordinary life insurance issued in accordance with the provisions for conversion under a group policy theretofore issued, provides that risk of self-destruction of the insured within two years from the

date of the policy is not assumed by insurer, such provision renders insurer liable only for the return of the premiums paid upon the self-destruction of the insured within the two year period, and the beneficiary may not successfully contend that the ordinary policy was a mere continuation of the original group insurance and that therefore the one year incontestability clause of the group policy precluded insurer from denying liability.

APPEAL by defendant from *Parker, J.,* June Term, 1953, EDGECOMBE. Reversed.

Civil action on life insurance policy.

On 31 July 1944, defendant issued to Washington Mills Company a group insurance policy, effective 1 August 1944, insuring the lives of the mill company's employees. Dr. John Alston Lineberry, Sr., was one of the employees so insured. The policy contained the following provisions:

(1) "The insurance of any employee covered hereunder shall terminate at the end of the month in which his employment with the employer shall terminate . . ."

(2) "Any Employee of the Employer covered under this group policy shall, in case of the termination of the employment for any reason whatsoever, be entitled to have issued to him by the Company without further evidence of insurability, and upon application made to the Company within thirty-one days after such termination and upon the payment of the premium applicable to the class of risks to which he belongs and to the form and amount of the policy at his then attained age, a policy of life insurance, in any one of the forms customarily issued by the Company, except term insurance, in an amount equal to the amount of the Employee's protection under this policy at the time of the termination of his employment. The issuance of such policy shall be a conversion of the Employee's insurance hereunder and shall as of the effective date an (*sic*) hour of the insurance under such individual policy, immediately and automatically terminate and cancel any insurance of the Employee hereunder then in force."

(3) A one-year incontestability provision.

On 1 September 1945, the certificate required by the group policy was issued and delivered to Dr. Lineberry. This certificate contained provisions no. 1 and 2 of the group policy above quoted, with such changes in the language thereof as were necessary to make them conform to the provisions of the certificate.

On 15 July 1948, Dr. Lineberry terminated his employment and applied for an individual policy in the sum of $3,000 as authorized in the certificate. On 28 July 1948, the defendant, pursuant to said application, issued its ordinary life policy No. 128503, insuring the life of

Dr. Lineberry in the sum of $3,000 in which plaintiff was named as beneficiary.

This policy provides that: (1) "Self-destruction on the part of the Insured, whether sane or insane, within two years from the date of this policy is a risk not assumed by the Company under this contract, and the extent of recovery hereunder shall be the premiums actually paid by the Insured;" and (2) "This policy and the application therefor . . . shall constitute the entire contract between the parties."

On 30 June 1950 the insured died as the result of a self-inflicted pistol shot wound. Plaintiff filed due proof of death and demanded payment of the face amount of the policy. Defendant denied liability by reason of the self-destruction provision above quoted and tendered return of the premiums actually paid. Thereupon plaintiff instituted this action.

At the hearing in the court below the parties waived trial by jury and submitted the same to the judge presiding to find the facts and render judgment thereon. The court thereupon found the facts as here summarized and concluded that the individual policy issued to Dr. Lineberry, after he terminated his employment by the mill, was a mere continuation of the group policy and the certificate issued to Dr. Lineberry; that it was dependent thereon; and "that the date of Policy No. 128503 must, under the facts of this case, be determined by the date of said Certificate No. 2212 issued under Group Policy G-119, and that any provisions in Policy No. 128503 in conflict herewith is (sic) considered surplusage."

It appearing from the facts found that the death of the insured occurred more than two years after the date of the certificate issued pursuant to the terms of the group policy, the court entered judgment for the plaintiff and defendant appealed.

*Henry C. Bourne for plaintiff appellee.*

*Leggett & Fountain and Womble, Carlyle, Martin & Sandridge for defendant appellant.*

BARNHILL, J. Do the group policy, No. G-119, Certificate No. 2212, issued to Dr. Lineberry as provided in the group policy, and policy No. 128503 form a single contract made 31 July 1944 (the date of the group policy) so that the one-year incontestability clause contained in the group policy and the certificate nullifies the self-destruction clause in policy No. 128503 for the reason the suicide of the insured did not occur within one year next after the date of the group policy and the certificate issued pursuant thereto? This is the single question posed by this appeal. The court below answered in the affirmative. We are constrained to reverse.

The conclusion contained in the judgment entered in the court below is in effect a conclusion that when a contract is once entered into between two or more persons, there can be no subsequent modification or novation thereof and that any provision contained in an agreement between the parties relating to the same subject matter which is in conflict with the terms and provisions of the original contract must be treated as mere surplusage. It requires no citation of authority to sustain the statement that this is not sound law.

The cardinal principle pertaining to the construction and interpretation of insurance contracts is that the intention of the parties should control. If not ambiguous or uncertain, the express language the parties have used should be given effect, and the intention of the parties must be derived from the language employed. An insurance contract must be construed without disregarding words or clauses used or inserting words or clauses not used. If the intention of the parties is clear, the courts have no authority to change the contract in any particular or to disregard the express language the parties have used. If the sense and meaning of the terms employed are clear and unambiguous, they must be given their plain, ordinary and popular connotation unless they have acquired a technical meaning in the field of insurance. 29 A.J. 172; *Roberts v. Insurance Co.,* 212 N.C. 1, 192 S.E. 873, 113 A.L.R. 310; *Stanback v. Insurance Co.,* 220 N.C. 494, 17 S.E. 2d 666; *Ford v. Insurance Co.,* 222 N.C. 154, 22 S.E. 2d 235; *Indemnity Co. v. Hood,* 226 N.C. 706, 40 S.E. 2d 198; *Motor Co. v. Insurance Co.,* 233 N.C. 251, 63 S.E. 2d 538; *Johnson v. Casualty Co.,* 234 N.C. 25, 65 S.E. 2d 347.

When the three instruments involved in this litigation are considered in the light of these rules of construction, it is made to appear that the contract of insurance sued upon is a separate, distinct, and independent contract, unmodified in any respect by the language contained in either the group policy or the certificate issued thereunder.

"Conversion" as used in the group policy means the act of converting or changing property of one nature to property of another nature, from one thing to another by substitution; exchanging for some specified equivalent. Webster's New Int. Dic. So then, the conversion provision in the original contract merely granted the insured the right, at his option, to convert his certificate into a separate and independent contract of insurance between him and the insurance company, without medical examination, and for the premium charged persons at his then attained age, provided he applied for the same within the stipulated thirty-one days next after his employment is terminated.

The "privilege of continuance" clause is "a favor offered to the insured, which he is at liberty to accept or not as he chooses. That this is its true meaning is made certain by the terms of the privilege which

are distinctly stated. The party who has been insured may take out regular life insurance without medical examination. He need not furnish evidence of insurability. This is all the privilege undertakes to give." *Duval v. Ins. Co.,* 50 A.L.R. 1276 (1285) (N.H.) ; 29 A.J. 1029 *et seq.*

Under the express terms of the group policy and the certificate delivered to Dr. Lineberry, the protection afforded thereby ended (1) at the end of the month during which his employment was terminated, or (2) upon the prior issuance of an individual policy as provided in the certificate.

The group policy was between the employer and the insurance company for the benefit of the employees of the mill company. And when a contract is made for the benefit of another—in this case Dr. Lineberry —he can have no greater rights under that contract than are provided thereby. *Thull v. Equitable Life Assurance Soc.,* 178 N.E. 850 (Ohio).

Therefore, the conversion provision in the original contract did not have the effect of continuing the insurance on the life of the employee. When the employment terminated, coverage provided by the policy and the certificate ceased. *Baker v. Insurance Co.,* 202 N.C. 432, 163 S.E. 110; *Pearson v. Assurance Society,* 212 N.C. 731, 194 S.E. 661; *Colter v. Travelers' Ins. Co.,* 170 N.E. 407 (Mass.) ; *Fearon v. Ins. Co.,* 246 N.Y.S. 701; *Kowalski v. Ins. Co.,* 165 N.E. 476, 63 A.L.R. 1030; *Beecey v. Ins. Co.,* 166 N.E. 571 (Mass.) ; *Duval v. Ins. Co., supra; Gans v. Ins. Co.,* 108 N.E. 443 (N.Y.).

There are other provisions in the instruments which clearly mark the ordinary life policy issued to Dr. Lineberry, after his employment terminated, as a separate and independent contract.

The group policy was a contract between the mills company and defendant, terminable at the will of the mills company. The ordinary life policy was a contract between Dr. Lineberry and defendant in which the mills company had no interest.

The premium charged under the group policy was based on the age of the insured 1 August 1944 while the premium to be paid on the policy sued on was determined by the age of the insured on the date of its issuance in 1948.

The group policy contained a one-year incontestability clause, the ordinary life policy, a two-year clause. The one-year incontestability clause in the group policy was in full force and effect when the new policy was issued. The two-year period in the new policy had not expired.

There was no self-destruction clause in the group policy and the two-year period during which the risk of self-destruction was not assumed under the ordinary life policy had not expired. The group policy was effective upon the payment by the employer of the first premium as

therein provided; the ordinary life policy, upon the payment by the insured of the first premium therein stipulated.

Furthermore, the new policy granted the insured nonforfeiture, face value surrender, paid up, and extended term insurance, not contained in the group policy or certificate.

For us to hold that the ordinary life policy was merely a continuation of the group policy insurance, and not a separate and independent contract, would require us to ignore completely the stipulation therein that "this policy and the application therefor . . . constitute the entire contract between the parties" and the provision in the group policy that "the issuance of such policy shall be a conversion of the Employee's insurance hereunder and shall as of the Effective Date and hour of the insurance under such individual policy, immediately and automatically terminate and cancel any insurance of the Employee then in force" and the other provisions fixing the date of termination of the group insurance and certificate of individual employees. It would likewise require us to strike therefrom the terms "from its date of issue" and "from the date of this policy" used to limit or qualify the incontestability and self-destruction clauses therein contained and substitute therefor the date of the group policy. This we are not privileged to do.

The language used by the parties is unambiguous. Its meaning is clear. There is no room for judicial construction. As the parties contracted, so are they bound.

The self-destruction of the insured having occurred within two years after the issuance of the policy sued on, the defendant, by the express terms of the contract, is not liable under the policy for any amount other than premiums actually paid. "It is there in plain English." *Hundley v. Ins. Co.*, 205 N.C. 780, 172 S.E. 361; *Johnson v. Insurance Co.*, 207 N.C. 513, 177 S.E. 646. This amount it has duly tendered. Judgment therefor, and no more, should be entered. To that end the judgment of the court below is

Reversed.