**Mary G. BRUCE, Administratrix of the Estate of Walter B. Bruce, Deceased, Appellant,**

v.

**LUMBERMENS MUTUAL CASUALTY COMPANY, a corporation, Appellee.**

No. 6956.

United States Court of Appeals Fourth Circuit.

Argued April 20, 1955.

Decided May 10, 1955.

Robert N. Simms, Jr., and Clyde A. Douglass, Raleigh, N. C. (John M. Simms, Raleigh, N. C., on brief), for appellant.

Murray Allen, Raleigh, N. C. (R. P. Upchurch, Raleigh, N. C., on brief), for appellee.

Before PARKER, C. J., and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This suit is brought by the Administratrix of Walter B. Bruce, deceased, against Lumbermens Mutual Casualty Company to secure a judgment in the sum of $10,000 under a policy of insurance issued to W. L. Aldridge, Jr. and O'Neals Flying Service, Inc. The declarations in the policy disclose that the business of the assured is the use of aircraft for business and pleasure, instruction of students, and commercial and passenger carrying for hire, and that the aircraft would be used in the United States, Canada and 100 miles into Mexico. The Insurance Company agreed in the policy, amongst other things, to pay on behalf of the insured all sums which the insured should become obligated to pay because of bodily injury sustained by any passenger while in or upon, entering or alighting from the aircraft, caused by accident and arising out of the ownership, maintenance or use of the aircraft.

Liability to a passenger was incurred by the insured on June 1, 1947, during the life of the policy, when Walter B. Bruce, the deceased, was killed while riding as a passenger in a plane covered by the policy. The accident occurred during an air show at the flying field of the insured for which admission was charged. Three planes were sent up, each designed to carry two passengers. Bruce went up with the pilot as a passenger in the lead plane. The plan was that the planes were to be put into spiral spins in a demonstration of safe flying. Such maneuvers are deviations from normal flight, and are known in the industry as aerobatic flights. The plane in which the deceased was a passenger took part in the maneuvers as planned but fell to the ground and crashed, and both occupants were killed.

At the time certain regulations were in effect which had been passed by the Civil Aeronautics Authority, the agency of the United States in charge of the operation of civilian aircraft in the United States under the provisions of 49 U.S.C.A. § 401 et seq. Section 60.9 of Part 50 of the Civil Air Regulations as to Air Traffic Rules defined the term aerobatic as "the performance of any intentional and unnecessary maneuvers involving an abrupt change in altitude of an aircraft, an abnormal altitude, or an abnormal speed." Part 43 of Civilian Air Regulations General Operation Rules contained the following paragraph. "43.-409. Aerobatic Flight. No pilot shall intentionally fly an aircraft in aerobatic flight carrying passengers unless all occupants are equipped with approved parachutes." Neither of the occupants of the plane which crashed was equipped with a parachute. The evidence, however, shows that parachutes would have been of no avail to save the lives of the occupants, because the pilot continued to execute the spins until the plane wa⊦

so near the ground that parachutes could not have been used effectively.

The administratrix of the estate of the deceased brought a wrongful death action against the Flying Service in the Superior Court of Wake County, North Carolina, and secured a judgment in the sum of $15,600 which was affirmed on appeal. Payment of the judgment was demanded and refused, and subsequently the present action against the Insurance Company was brought and resulted in a judgment in its favor. D.C., 127 F. Supp. 124. This appeal of the administratrix ensued.

The defense to the present suit in the trial court and on this appeal is based on the ground that the accident was not covered by the policy, but was within an exclusion of the policy which provided in effect that the policy should not apply "(d) to liability with respect to bodily injury or damage caused by the operation of the aircraft with the knowledge of the named insured; (1) if used for any unlawful purpose, or, during flight or attempt thereat, in violation of any government regulation for civil aviation." There is no doubt that the plane in which the deceased was killed was operated in violation of the quoted regulation, since the pilot did intentionally fly the aircraft in aerobatic flight with a passenger and the occupants were not equipped with approved parachutes. The appellant contends, however, that this exclusion does not apply in the present case (1) because the only exclusions applicable to passengers are found in subsequent provisions of the policy and do not preclude the present claim, and (2) because there was no causal connection between the violation of the regulation and the fatal crash.

The subsequent exclusions in the policy refer in express terms to Coverage A—Bodily Injury Liability, Excluding Passengers, Coverage B—Bodily Injury Liability—Passengers, and Coverage C—Property Damage Liability. Under Coverage B it is provided that the policy does not apply "to liability with respect to bodily injury to any passenger caused by the operation of the aircraft with the knowledge of the named insured: (1) during flight or attempt thereat, between sunset and sunrise unless all night flying requirements of the Civil Aeronautics Authority are complied with; (2) if the aircraft is carrying passengers in excess of the policy passenger capacity as stated in the declarations, or is loaded in excess of the gross weight permitted by the Civil Aeronautics Authority in the Type Certificate issued for the make and type of the aircraft, or in the certificate issued to the aircraft, whichever is more limited."

It is conceded that the last mentioned exclusions do not of themselves preclude recovery in this case since the flight in question did not take place at nighttime and there was no carriage of passengers in excess of the capacity of the plane. It is therefore contended that since these exclusions refer in express terms to the liability of the insured for bodily injury to passengers, they should govern the decision of this controversy rather than the general exclusion first above described.

The appellant invokes the rule, as set out in 17 C.J.S., Contracts, § 312, that the expression in a contract of things of a class implies the exclusion of all not expressed, even though all would have been implied had none been expressed. The rule is generally given effect when a clause which sets out with particularity the subject matter that the parties have in mind is followed by a clause expressed in general terms, in which case the latter is controlled or restricted by the former; Cleveland Trust Co. v. Consolidated Gas, E. L. & P. Co., 4 Cir., 55 F.2d 211 and where there is an inconsistency between general provisions and specific provisions, the specific provisions ordinarily qualify the meaning of the general provisions. See Restatement of Contracts § 236(c); Southern R. Co. v. Coca Cola Bottling Co., 4 Cir., 145 F.2d 304; Fox Realty Co. v. Montgomery Ward & Co., 7 Cir., 124 F.2d 710, 714; Southern Surety Co. v. Town of Greenville, 6 Cir., 261 F. 929,

932; Nance v. Southern R., 149 N.C. 336, 371, 63 S.E. 116; In re Steelman, 219 N. C. 306, 13 S.E.2d 544.

■ This rule, however, is subject to the general standards applied in the interpretation of contracts which require that an interpretation which gives a reasonable effect to all the manifestations of intention in an agreement is preferred to an interpretation which leaves a part of such manifestations unreasonable or of no effect; Restatement of Contracts § 236(a); or as said in 17 C.J.S., Contracts, § 313, if both general and special provisions may be given reasonable effect, both are to be retained.

■ It is noteworthy that there is no conflict between the particular and the general exclusions of the policy set out above. It is true that there would seem to have been no need to exclude from the risk the specific violations of the regulations of the Civil Aeronautics Authority contained in the particular clauses in view of the sweeping terms of exclusion (d) which excludes from coverage any liability for bodily injury caused by any operation of the plane in violation of any government regulation for civil aviation; but each class of exclusions may be given effect without impairing the force of the other.

More impressive in this connection is the distorted result which would follow if the general exclusions relating to passenger injuries should be restricted to those which are particularized. Heretofore we have referred only to paragraph (d) (1) of the general exclusions, but there are additional paragraphs under this head. Thus, paragraphs (d)2 and (3) exclude from coverage liability for bodily injury caused by operation of the aircraft if its Civil Aeronautics Authority's certificate has been revoked or suspended, or if the certificate of the pilot has been restricted, revoked, suspended or has expired. It is unreasonable to suppose that the Insurance Company was willing to assume the great risk of injury to passengers involved in the operation of a plane whose certificate had been revoked or suspended, or whose pilot's right to operate the plane had been withdrawn by government authority, and intended to confine its exclusions as to passengers to flying at night and to the carriage of passengers in excess of the capacity of the plane in violation of the regulations. Since there is no ambiguity in the policy and no conflict between its provisions, all parts of the contract should be given effect. Stanback v. Winston Mutual Life Ins. Co., 220 N.C. 494, 17 S.E.2d 666; Lineberry v. Security Life & Trust Co., 238 N.C. 264, 267, 77 S.E.2d 652.

■■ The second contention of the appellant, that the judgment must be reversed because no causal connection between the violation of the regulations and the accident was shown, must also be rejected. The clear meaning of the policy is not as the appellant suggests that the risk is excluded if the injury is caused by a violation of the regulations, but that the risk is excluded if the injury is caused by the operation of the plane *while* it is being used in violation of the regulation. It is established by the great preponderance of authority in the decisions of this and other courts that an insurer need not show a causal connection between the breach of an exclusion clause and the accident, if the terms of the policy are clear and unambiguous, since the rights of the insured flow from the contract of insurance and not from a claim arising in tort. See Myers v. Ocean Accident & Guarantee Corp., 4 Cir., 99 F.2d 485, 491 and cases cited.

In Travelers' Protective Ass'n of America v. Prinsen, 291 U.S. 576, 54 S. Ct. 502, 78 L.Ed. 999, the evidence showed that an explosion took place as the result of a collision between a motor truck containing dynamite and a train, and the occupants of the truck were killed. Suit was brought on a policy of insurance which excluded liability for death of a person which occurs in the transportation of explosives, and it was contended that the insurer was liable because the death of the occupants of

the truck might have been caused by the collision without more. The court rejected the contention, 291 U.S. at pages 581–582, 54 S.Ct. at page 504, saying: "The contract does not say that the holder of the policy is to have no claim against the insurer if he dies 'by reason of' his participation in the carriage of explosives. The contract says that he is to have no claim against the insurer if he dies 'when' he is participating in the carriage of explosives, just as it provides for a like result when he is acting as a sailor or a soldier, or is participating in war or riot, or is under the influence of narcotics or of intoxicating liquors. Courts of high authority have held that in policies so phrased there is no need of any causal nexus between the injury or death and the forbidden forms of conduct. While the proscribed activity continues, the insurance is suspended as if it had never been in force."

Affirmed.