## Staunton

PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY v. ALICE KEGLEY.

September 6, 1957.

Record No. 4699.

Present, All the Justices.

The opinion states the case.

*J. L. Camblos*, for the plaintiff in error.

*R. C. Shannon*, for the defendant in error, submitted on brief.

BUCHANAN, J., delivered the opinion of the court.

Alice Kegley brought this action to recover on a life insurance

policy, in which she was the beneficiary, issued to her husband, Claude Kegley, by the defendant, Provident Life and Accident Insurance Company. The company denied liability beyond the total of the premiums paid for the policy on the ground that the insured had committed suicide and a clause in the policy limited its liability in that event to the amount of the premiums. The case was submitted to the court for decision without a jury on an agreed statement of facts. The court found for the plaintiff and entered judgment against the defendant for $1,000, the amount of the policy, and the defendant has appealed.

Prior to February 1, 1953, the defendant issued its group life policy and its group accident and disability policy to Stonega Coke & Coal Company for the benefit of its employees. Claude Kegley was an employee of that company. On February 1, 1953, the defendant issued to Claude Kegley a certificate stating that he was insured for the benefits described therein, including life insurance in the sum of $1,000, subject to the terms and conditions of the group policies, and naming his wife, Alice Kegley, as beneficiary.

These group policies (which are not in evidence) provided, as set forth in this certificate, that the insurance thereunder with respect to the employee would terminate, *inter alia*, when active employment of the employee with the employer terminated. The policies and the certificate also contained this provision:

"Conversion—Upon termination of insurance under the group policy, because of termination of employment with the Employer, any Employee shall be entitled to have issued by the Insurance Company, without medical examination, a policy of life insurance in any one of the forms customarily issued by the Insurance Company, except term insurance, upon written application made to the Home Office of the Insurance Company within thirty-one days after the termination of employment and upon payment of the premium applicable to the class of risk to which the Employee belongs and to the form and amount of policy at the Employee's then attained age. Any individual policy issued in accordance with this provision shall become effective at the expiration of the thirty-one day period during which the Employee was entitled to make application for the individual policy. The amount of the individual policy shall not exceed the amount of the Employee's life insurance in force at the beginning of such thirty-one day period."

The group policies, as the certificate stated, further provided that

if an employee died during the thirty-one day period the insurance company would pay his beneficiary the amount of his life insurance in force at the beginning of that period, whether or not the individual policy had been applied for or the first premium paid.

Claude Kegley's employment with Stonega Coke & Coal Company terminated on October 2, 1954. Under the conversion provision above quoted he applied to the insurance company for a $1,000 life policy and pursuant thereto the company issued to him its policy No. 193335, agreeing to pay the maturity value thereof to the insured on the maturity date if the insured was then living and all premiums had been paid, or to pay the face amount to the beneficiary upon proof of the death of the insured while the policy was in force. Alice Kegley, the wife of the insured, was named the beneficiary of this policy and its effective date was November 2, 1954. It contained this clause:

"If the Insured shall die as a result of suicide, whether sane or insane, within two years from the Effective Date of this policy, the amount of insurance payable shall be limited to the premiums paid in cash for this contract." See Code, § 38.1-437.

Claude Kegley committed suicide on April 23, 1955, less than six months from the effective date of the policy. The plaintiff brought this action on this policy No. 193335, and it is stipulated that if the suicide provision does not bar her recovery she is entitled to the full sum of $1,000. The defendant tendered to her the sum of $29.52 as the amount due under the policy, being the total of the premiums paid thereon in cash.

It is the contention of the plaintiff that the policy sued on was not a new contract but merely a continuation of the insurance provided for by the group policies and certificate, and hence that the two-year period with respect to suicide should be reckoned from the date of the certificate, February 1, 1953, and not from the date of the policy sued on, November 2, 1954. She relies on *Philadelphia Life Ins. Co.* v. *Erwin*, 165 Va. 469, 182 S. E. 209, to support that contention.

The facts of the present case clearly distinguish it from the *Erwin* case and from the cases cited in support of that decision. See *Nielsen* v. *General American Life Ins. Co.*, 89 F. 2d 90, 110 A. L. R. 1133.

In the *Erwin* case the insurance company had issued to Erwin a five-year term policy with disability benefits, dated January 20, 1927. On October 1, 1931, while this policy was in force, Erwin became

totally disabled. In December, 1931, he applied for the disability benefits to the company's agent and requested that the term policy be converted at its expiration to an ordinary life policy with disability benefits. The agent advised him to wait until the new policy was issued before putting in his claim for disability. Accordingly the 1927 policy was exchanged for an ordinary life policy, dated January 20, 1932, issued on the application for the 1927 policy, on the same medical examination and bearing the same number, which application formed a part of the new policy. The new policy covered only disability occurring after its date.

Erwin sued for his disability, filing with his motion for judgment the 1932 policy which he alleged had been issued to him on his surrender of the 1927 policy, which was in force when he was totally disabled.

The company contended that the plaintiff's action was based entirely on the 1932 policy, under which it was not liable for the disability which occurred prior to its date. Erwin contended that his disability occurred while the 1927 policy was in force, that he had simply exchanged that policy for the 1932 policy and the latter was but a continuation of the 1927 policy.

The court held, two Justices, including the present Chief Justice, dissenting, that the plaintiff had substantially alleged that his disability had occurred under the 1927 policy; that the evidence was amply sufficient to show that the new policy was but a continuation of the old and not a separate and independent contract, and that since the only defense offered was based on the technical ground that the plaintiff declared on the 1932 policy alone, which the record did not sustain, the judgment for the plaintiff should be affirmed.

The facts in the present case are materially different. There was no contention here that this was a suit on the group policies. It was based explicitly on the new policy alone. There was no exchange of policies here. The group insurance pursuant to which the certificate of February 1, 1953, was issued to Kegley had completely terminated as to him on October 2, 1954, the date when his employment with the coal company terminated. *Collins* v. *Metropolitan Life Ins. Co.*, 163 Va. 833, 178 S. E. 40; *Duval* v. *Metropolitan Life Ins. Co.*, 82 N. H. 543, 136 A. 400, 50 A. L. R. 1276. He then had only the right to convert his death benefit under the group policies to an individual policy as provided by the conversion clause above quoted. Thereupon, according to the terms of the group

policies and the certificate, he was entitled to have issued to him without medical examination a policy in one of the forms customarily issued by the company, except term insurance, upon application made within thirty-one days after termination of his employment and upon payment of the premium applicable to his class of risk and to the form and amount of the policy at his then attained age, and to become effective at the expiration of the 31-day period during which he was entitled to make the application.

By a written application dated November 30, 1954, attached to the new policy, Kegley applied for "the conversion of my death benefit under the Group Policy described below to an individual Life Policy on the Endowment at 85 Plan, or on the Select Risk Ordinary Life Plan if I am eligible." The number of the group life policy, the number of his certificate and the amount of $4.25 paid therefor were stated. The date of this application was in fact 59 days after the termination of his employment but pursuant thereto the company issued the policy sued on, which is a life policy in the sum of $1,000 on the endowment at 85 plan, as applied for, the effective date of which was November 2, 1954, and which contained the suicide provision above quoted. The premium rate was $14.76 quarterly.

A clause in this policy also provided: "This policy has been issued in consideration of the application, a copy of which is attached to and made a part of this policy, and of the payment of premiums as provided herein. This policy and the application for it constitute the entire contract. * * ."

By no valid method may this policy be construed as a continuation of the group policies and the certificate of February 1, 1953, which provided for life insurance, accidental dismemberment and disability benefits as well as family funeral benefits only during the time that the insured continued in the employment of the coal company. As stated, his employment terminated and the insurance under the group policies terminated at the same time. Within thirty-one days after that termination date he could, if he wished, apply for and have issued to him, without medical examination, a new policy in any one of the forms customarily issued by the company, upon payment of the applicable premium. On his application there was issued to him the type of policy for which he applied, for which he paid a different rate of premium, which contained different terms and which covered only one of the risks embraced in the group policies. This was a new and different contract and it must be construed according

to its terms. " '* * They are plain and clear and we are bound to adhere to them as the only authentic expression of the intention of the parties.' " *Collins* v. *Metropolitan Life Ins. Co., supra*, 163 Va. at 839, 178 S. E. at 43.

In *Gans* v. *Aetna Life Ins. Co.*, 214 N. Y. 326, 329, 108 N. E. 443, the company issued a term policy dated April 5, 1907, insuring the life of the insured for five years and no longer except "* * (b) upon any anniversary of its date it might 'be exchanged without medical re-examination for a new policy upon any plan then in use by said company on payment of the premium required for such new policy for the insuring age then attained by the insured,' * *." On April 3, 1912, the insured made under the quoted option a written application to the company for a new policy and therein agreed that the statements and answers in the application for the term policy should be the basis for the new policy, except that the kind of policy, the amount and the premium should be as specified. In accord with the application a policy was issued dated April 5, 1912, and providing, as did the term policy of 1907, that if the insured committed suicide within a year from its date, which he did, the policy would be void. It was contended by the beneficiary of the 1912 policy, that the two policies formed a single contract and hence the suicide clause was inoperative because the suicide was not within one year after the date of the first policy. Holding to the contrary, the court said:

"The intent of the insured and the company existing April 5, 1912, as expressed, binds and obligates both of the parties. Presumptively, their intent is expressed by the natural and ordinary meaning of their language referable to it and such meaning cannot be perverted or destroyed by the courts through construction. Where the parties by their words have left no fair reason for doubt, there is no just or defensible excuse for construction. * *." 214 N. Y. at 330, 108 N. E. at 444.

In *Lineberry* v. *Security Life & Trust Co.*, 238 N. C. 264, 77 S. E. 2d 652, the facts were quite similar to those of the case in judgment. The insurance company on July 31, 1944, issued a group policy insuring the lives of a mill company's employees, one of whom was Dr. Lineberry, and issued to him a certificate, both providing that the insurance terminated at the end of the month in which the employment terminated and containing a conversion provision to the same effect as the one above quoted. The group policy also contained a one-year incontestable clause but no suicide clause. Dr. Lineberry

terminated his employment and on his application there was issued to him an ordinary life policy dated July 28, 1948, containing a clause that if he committed suicide within two years of that date, the limit of recovery would be the premiums paid; and also a clause that the policy and the application constituted the entire contract. Dr. Lineberry committed suicide on June 30, 1950, and the question presented was whether the group policy and certificate and the policy of July 28, 1948, constituted a single contract so that the one-year incontestability clause of the group policy nullified the suicide clause in the 1948 policy.

The court held that the conversion provision merely granted the insured the right, at his option, to convert his certificate into a separate and independent contract of insurance, without medical examination, and for the premium applicable to his then attained age, and that when the three instruments—the group policy, the certificate and the new policy—were considered in the light of settled rules of construction, it was clear that the insurance policy sued on was a separate, distinct and independent contract, unmodified in any respect by the group policy or the certificate. "The language used by the parties is unambiguous. Its meaning is clear. There is no room for judicial construction. As the parties contracted, so are they bound. * * 'It is there in plain English.' * *." 238 N. C. at 269, 77 S. E. 2d at 655-6.

It was likewise plainly written in the policy on which this suit is based that if the insured committed suicide within two years from the effective date of that policy, which was November 2, 1954, the amount of insurance under the policy was limited to the premiums. This is clear language. There is no ambiguity, and we cannot use the office of construction to make for the parties a contract different from the one they made for themselves. The judgment here can be for no more than the parties agreed the defendant should pay, being the total of the premiums, which sum it has tendered to the plaintiff.

*Reversed and final judgment.*