, BEATRICE BRINDIS *vs.* THE MUTUAL LIFE INSURANCE
COMPANY OF NEW YORK.

No. 88-P-1106.

Essex. October 17, 1989. - October 11, 1990.

Present: ARMSTRONG, CUTTER, & DREBEN, JJ.

*Insurance*, Life insurance.

Where successive policies of life insurance were issued pursuant to an op-
tion in an original policy, the date from which to measure the two-year
period of the suicide clause was the date of issuance of each successive
policy. [369-371]

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 29, 1986.

The case was heard by *Peter F. Brady*, J., on a motion for
summary judgment.

*John P. Carr* for the defendant.

*John J. Ryan, III*, for the plaintiff.

ARMSTRONG, J. The insured, Paul Brindis, died by his own
hand on October 31, 1983. The defendant (MONY) had is-
sued three insurance policies on his life, each containing a
two-year contestability clause and a two-year suicide clause.
The latter provided that death of the insured by suicide
within two years after the date of issue would obligate
MONY only to pay benefits in the amount of the premiums
paid. The first of the policies was issued August 18, 1977,
and MONY has paid the face amount of that policy,
$25,000, to the plaintiff, who is the beneficiary of each of the
policies. The second and third policies were issued pursuant
to a rider entitled "Option to Purchase New Insurance Poli-
cies" contained in the first policy. The option provided that
"[a] new individual life insurance policy . . . may be pur-
chased, without new evidence of insurability, as of each of

the [o]ption [d]ates specified below on which this rider is in force. . . ." The option dates specified were the policy anniversaries closest to the insured's twenty-fifth, twenty-eighth, thirty-first, thirty-fourth, thirty-seventh, and fortieth birthdays. The insured exercised his first option, and a second policy in the face amount of $15,000 was issued August 18, 1981. (MONY has also paid that amount to the plaintiff.) The insured exercised his second option on September 22, 1982, and the third policy was issued October 4, 1982. Because this was one year and twenty-seven days from the insured's death, MONY limited the benefit to the amount of the premiums paid. The beneficiary argues that the relevant date for the suicide clause to attach is that of the issuance of the first, not the third, policy and that she is entitled to the full face amount of $15,000.

It is not tenable to argue that policies two and three are merely extensions of coverage under the first policy. The option was to purchase "new insurance policies," which were to be written "in accordance with Company standards in effect on the date of issue of the new polic[ies]." Separate applications were filed, new policies were issued with different numbers, containing different schedules of values, schedules of premiums, and settlement options. The contestability clauses were modified to apply from the date of issue of the first policy reflecting the insured's right to limited additional coverage without regard to his insurability.[1] The suicide clause, by contrast, appears in each of the new policies without similar modification.

The plaintiff analogizes policies two and three in this case to "conversion policies" (as when the insured converts one policy as of right into a new one: for example, from term coverage to permanent coverage) or to policies issued pursuant to master policies (as, for example, when an employee

---

[1]"The following applies solely with respect to that much of the face amount which does not exceed the [o]ption [a]mount: the two year contestable period shall be deemed reduced by the period elapsed from the date of issue . . . of the [o]riginal [p]olicy's [p]urchase [o]ption. This shall not affect the contestable period for any additional benefits."

having group life insurance coverage continues that coverage upon retirement or other severance through issuance of an individual policy). In these situations, it is true, many decisions have measured the period (usually one or two years) of the suicide clause from the date of issuance of the original policy (in a conversion) or of the master policy rather than the date of issue of the replacement, depending upon such factors as whether the original or master policy entitles the insured to the issuance of the substitute policy and whether the terms of the substituted policy are sufficiently similar to those of the original or master policy to be regarded as a continuation of coverage. See, e.g., *Travelers Ins. Co.* v. *Summers*, 696 F.2d 1311 (11th Cir. 1983)("date of issue" as used in two-year suicide clause held, due to ambiguity, to refer to effective date of temporary coverage that preceded issuance of permanent policy); *Founders Life Assur. Co. of Fla.* v. *Poe*, 242 Ga. 748, 749-750 (1978); *Commonwealth Life Ins. Co.* v. *Jackson*, 432 N.E.2d 1382, 1384-1392 (Ind. App. 1982); *Jackson* v. *Western & S. Life Ins. Co.*, 451 So.2d 1244 (La. Ct. App. 1984); *Baugh* v. *Metropolitan Life Ins. Co.*, 173 Tenn. 352 (1938); *Occidental Life Ins. Co. of N.C.* v. *Hurley*, 513 S.W.2d 897, 899 (Tex. Civ. App. 1974). Contrast *Binkley* v. *Manufacturers Life Ins. Co.*, 471 F.2d 889 (10th Cir. 1973)(individual policy issued after termination of employment held, by Colorado law, not to be a continuation of group coverage because of difference in face amount and policy terms); *United Fence Co.* v. *Great-West Life Assur. Co.*, 723 P.2d 722 (Ariz. 1986)(conversion policy differing from original policy in face amount, premiums, owner, and beneficiary treated as new policy rather than a continuation); *Lineberry* v. *Security Life & Trust Co.*, 238 N.C. 264, 267-269 (1953); *Bickford* v. *Metropolitan Life Ins. Co.*, 114 N.H. 237 (1974)(permanent policy held not a continuation of temporary policy that had expired before issuance of permanent policy); *Provident Life & Acc. Ins. Co.* v. *Kegley*, 199 Va. 273, 275-279 (1957). See also 1B Appleman, Insurance Law and Practice § 499, at 383-384 (1981); Annot., Time When Period Provided for in Suicide

Clause of Life or Accident Policy Begins to Run, 37 A.L.R.3d 933 (1971). In all of these cases, the conversion policy or individual policy replaced the coverage the insured had under an earlier policy, the suicide clause of which had already been made inoperative by the passage of time. The decisions have sought to avoid the possible unfairness to the insured of permitting a change in the form of his policy to effect a surrender of valuable rights.

That consideration does not apply where successive policies giving additional coverage are issued pursuant to an option in an original policy. Each new policy provides additional coverage rather than substitute or replacement coverage. The insured's accrued rights under the earlier policies remain intact so long as he pays the premiums on those policies. *Massachusetts Mut. Life Ins. Co. v. Thacher*, 15 A.D.2d 242 (N.Y. 1961), relied on by the plaintiff, is not on point. There a divided (three-two) panel upheld an order by the superintendent of insurance construing a New York statute as mandating that the suicide and incontestability periods of successive policies issued under an additional benefits rider be measured from the date of issue of the original policy. Our attention is directed to no comparable Massachusetts statute,[2] and, in any event, the New York decision turned in part on the deference traditionally given by the courts to the administrative rulings of an officer charged with enforcing a body of regulatory law. *Consolidated Cigar Corp. v. Department of Pub. Health*, 372 Mass. 844, 850 (1977). *Grocery Mfrs. of America, Inc. v. Department of Pub. Health*, 379 Mass. 70, 75 (1979). No consideration of public policy precludes an insurer in Massachusetts from seeking to deter persons who may be contemplating suicide from putting in place new or expanded insurance coverage.

---

[2]To the contrary, G. L. c. 175, § 139, expressly permits an insurer to provide for measuring the incontestability clause from the date of issue of a converted policy of life or endowment insurance.

The judgment is reversed, and a new judgment is to be entered for the defendant on each count. Neither party is to have costs of appeal.

*So ordered.*